1
2
3
4
5
6
7

8                       **UNITED STATES DISTRICT COURT**

9                     **EASTERN DISTRICT OF CALIFORNIA**

10

| | |
|---|---|
| 11  RICHARD NUWINTORE, | )  Case No.: 1:13-cv-00967 - AWI - JLT |
| 12               Plaintiff, | )<br>)  FINDINGS AND RECOMMENDATIONS |
| 13       v. | )  GRANTING THE MOTION TO DISMISS<br>)  BROUGHT BY THE UNITED STATES OF |
| 14  UNITED STATES OF AMERICA, et al., | )  AMERICA<br>) |
| 15               Defendants. | )  (Doc. 30)<br>) |
| 16  _____ | ) |

17           Defendant United States of America ("the Government") seeks dismissal of claims brought by

18   Plaintiff Richard Nuwintore ("Plaintiff") for lack of subject matter jurisdiction, pursuant to Federal

19   Rule of Civil Procedure Rule 12(b)(1). (Doc. 30.)  Plaintiff opposes the motion, asserting the Court has

20   subject matter jurisdiction over his claims. (Doc. 32.)

21           The matter was referred for the entry of Findings and Recommendations pursuant to 28 U.S.C.

22   § 636(b)(1) and Fed. R. Civ. P. 72 on January 27, 2014.  (Docs. 41, 42.)  Because Plaintiff fails to

23   demonstrate that he was not provided with habitable housing at Taft Correctional Institution and the

24   independent contractor exception to the Federal Tort Claims Act shields the Government from liability,

25   the Court recommends the Government's motion be **GRANTED**.

26   **I.       Factual and Procedural History**

27           Plaintiff initiated this action by filing a complaint against the Government and Management &

28   Training Corporation ("MTC") on June 25, 2013.  (Doc. 1.)  Plaintiff alleges the defendants operated

Taft Correctional Institution, and their "officers, agents and/or employees negligently and recklessly exposed… Plaintiff to the potentially deadly disease known as Coccidioidomycosis," commonly referred to as Valley Fever.  (*Id.* at 2, ¶¶ 2-3.)  Valley Fever "is contracted by the inhalation of an airborne fungus . . . endemic in the soil of various areas of the Southwest."  (*Id.* at 4, ¶ 10.)  Plaintiff alleges that he was sentenced to serve 14 months in federal prison on July 5, 2011, and was assigned to Taft Correctional Institution on or about August 4, 2011. (*Id.* at 11, ¶ 34.)  According to Plaintiff, prior to incarceration, he "had not previously been exposed to the disease Coccidioidomycosis."  (*Id.*)

Plaintiff asserts that the defendants "were on notice of the risk of harm from cocci and failed to take actions to protect Plaintiff from that harm."  (Doc. 1 at 6, ¶ 16.)  He alleges "the defendants failed to take any particular measures to protect the inmates at Taft from inhaling the naturally occurring airborne dust generated by the desert winds and nearby agricultural activities."  (*Id.* at 11, ¶ 36.)  Specifically, Plaintiff alleges:

> Plaintiff was not provided any special protective breathing masks or other devices, and to his knowledge there was no special air conditioning equipment employed by the facility to filter out the dust occurring in the local environment.  Nor was there any prohibition of outdoor activities during dusty conditions. Nor was anything done to keep the dust that forms that basis of the facility covered with grass or shrubs. Nor was that dust ever watered down or oiled down. Nor were inmates kept inside during windy conditions. As a result of these errors, Plaintiff contracted Cocci.

(*Id.* at 11, ¶ 36.)  Based upon these facts, Plaintiff asserted the defendants were liable for negligence, and that the Government violated 18 USC Section 4042(a).  (*Id.* at 13-17.)

Plaintiff filed his First Amended Complaint ("FAC") on November 26, 2013.  (Doc. 23.)  In addition to the facts alleged previously, Plaintiff alleges an epidemic of Valley Fever at Taft CI and its surrounding areas occurred in 2003, after which the Bureau of Prisons ("BOP") "contacted the Center for Disease Control ("CDC") to develop and implement a plan related to the cocci-outbreak at Taft CI." (Doc. 23 at 7-8, ¶¶ 25-26.)  Plaintiff asserts that the CDC and the BOP "eventually developed a policy to address the cocci outbreak at Taft CI…," which "only protected infected-inmates and a small portion of non-infected inmates (those who suffered from other medical conditions that compromised their immune systems)."  (*Id.* at 8-9, ¶ 28.)  He asserts the defendants are liable for negligently failing to house him in a safe and habitable prison.  (*Id.* at 17, 19).  In addition, Plaintiff alleges the Government is liable for a breach of duty of care under 18 USC Section 4042(a), and that MTC is liable for

negligent "failure to operate and maintain [the] prison facility in safe and habitable condition" (*Id.* at 18, 20, emphasis omitted.)

The Government filed the motion to dismiss now pending before the Court on December 23, 2013.  (Doc. 30.)  Plaintiff filed his opposition to the motion on December 30, 2013 (Doc. 32), to which the Government filed a reply on January 27, 2014.  (Doc. 40.)

## II.    Motions to Dismiss Pursuant to Rule 12(b)(1)

The district court is a court of limited jurisdiction, and is empowered only to hear disputes "authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *Exxon Mobil Corp v. Allapattah Servs., Inc.*, 545 U.S. 546, 552 (2005).  The federal courts are "presumed to lack jurisdiction in a particular case, unless the contrary affirmatively appears." *A-Z Int'l. v. Phillips*, 323 F.3d 1141, 1145 (9th Cir. 2003).  Thus, a plaintiff carries the burden of demonstrating the Court has subject matter jurisdiction.  *Kokkonen*, 511 U.S. at 377 (citing *McNutt v. General Motors Acceptance Corp*, 298 U.S. 178, 182-83 (1936)); *Vacek v. United States Postal Serv.*, 447 F.3d 1248, 1250 (9th Cir. 2006).

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, a party may challenge a claim for relief for lack of subject matter jurisdiction.  A motion to dismiss under Rule 12(b)(1) "may either attack the allegations of the complaint or may be made as a 'speaking motion' attacking the existence of subject matter jurisdiction in fact." *Thornhill Pub. Co., Inc. v. Gen. Tel. & Electronics Corp.*, 594 F.2d 730, 733 (9th Cir. 1979) (citing *Land v. Dollar*, 330 U.S. 731, 735 (1947)).  Thus, "[a] jurisdictional challenge under Rule 12(b)(1) may be made either on the face of the pleadings or by presenting extrinsic evidence." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citing *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000)).  The Ninth Circuit explained:

> In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction.  By contrast, in a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction.

*Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1038 (9th Cir. 2004).  On a motion to dismiss under Rule 12(b)(1), the standards that must be applied by the Court vary according to the nature of the jurisdictional challenge.

If a defendant presents a *facial* challenge to the Court's jurisdiction, the Court must presume the truth of the Plaintiff's factual allegations "and draw all reasonable inferences in his favor." *Doe v. Holy*, 557 F.3d 1066, 1073 (9th Cir. 2009); *Savage v. Glendale Union High Sch. Dist.* No. 205, 343 F.3d 1036, 1039 n.1 (9th Cir. 2003), *cert. denied*, 541 U.S. 1009 (2004). The Court should not "assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981). However, the Court "may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment" when resolving a facial attack. *Safe Air*, 373 F.3d at 1039.

On the other hand, if a defendant presents a *factual* challenge to the Court's jurisdiction, the Court "may review any evidence, such as affidavits and testimony." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988), *cert. denied*, 489 U.S. 1052 (1989); *Warren*, 328 F.3d at 1139. The Ninth Circuit explained: "Faced with a factual attack on subject matter jurisdiction, 'the trial court may proceed as it never could under 12(b)(6) or Fed. R. Civ. P. 56. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Thornhill Pub. Co. v. General Tel. & Elec. Corp.*, 594 F.2d 730, 734 (17979) (quoting *Mortenson v. First Fed. Sav. & Loan Assoc.*, 549 F.2d 884, 891 (1977)).

In this case, the Government makes a factual challenge against Plaintiff's claims, presenting declarations and documents in support of its motion to dismiss. Consequently, in opposing dismissal of his complaints against the Government, Plaintiff "must furnish affidavits or other evidence necessary to satisfy [the] burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039, n.2. Any factual dispute in the evidence presented by the parties must be resolved in favor of Plaintiff. *See Dreier v. United States*, 106 F.3d 844, 847 (9th Cir. 1996) ("we will consider items outside the pleading that were considered by the district court in ruling on the 12(b)(1) motion, but resolve all disputes of fact in favor of the non-movant").

## III.   Discussion and Analysis

The Government argues Plaintiff's claims against the United States should be dismissed pursuant to Rule 12(b)(1) because "the 'independent contractor' exception to the Federal Tort Claims

4

Act bars subject matter jurisdiction over the [negligence] claims pleaded." (Doc. 30-1 at 1.) Further, the Government argues that Plaintiff's claim for a violation of 18 U.S.C. § 4042(a) is barred. (*Id.* at 2.) Plaintiff contends the Government is liable for breaching its duty "to house Plaintiff in a facility that was safe for Plaintiff" in light of its maintenance of control over Taft Correctional Institution ("TCI" or "Taft CI"). (Doc. 37 at 7). According to Plaintiff, the Government retained sufficient control over TCI, such that "independent contractor" exception to the FTCA is inapplicable to his claims against the United States. (*Id.* at 15-21.)

### A.     The FTCA and United States immunity

The United States "is immune from suit save as it consents to be sued," and "the terms of its consent to be sued in any court define that court's jurisdiction." *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Absent a statutory waiver of sovereign immunity, an action against the United States must be dismissed. *Elias v. Connett*, 908 F.2d 521, 527 (9th Cir. 1990). A waiver of sovereign immunity must be "unequivocally expressed in the statutory text…[,] strictly construed in favor of the United States, and not enlarged beyond what the language of the statute requires." *United States v. Idaho,* 508 U.S. 1, 6-7 (1993) (internal citations and quotations omitted).

The FTCA provides "a limited waiver of sovereign immunity for torts claims arising out of the conduct of a government employee acting within the scope of his or her employment." *Valdez v. United States*, 56 F.3d 1177, 1179 (9th Cir. 1995) (citing 28 U.S.C § 1346(b)). Specifically, the FTCA provides that the United States may be sued "under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b).

### B.     Claims for a breach of the duty arising under 18 U.S.C. § 4042(a)

As an initial matter, the Government contends "there is no waiver of sovereign immunity for alleged breach of federal statutory duties" because "'law of the place' in the FTCA means state law." (Doc. 30-1 at 14) (citing *Fed. Deposit Ins. Co. v. Meyer*, 510 U.S. 417, 478 (1994)). Therefore, the Government argues Plaintiff's Third Cause of Action for a breach of 18 U.S.C. § 4042(a) is barred "because he cannot state an FTCA claim based on the alleged breach of a federal duty." (*Id.* at 2.)

Pursuant to 18 U.S.C. § 4042, the Bureau of Prisons shall "have charge of the management and

regulation of all Federal penal and correctional institutions" and "provide suitable quarters and provide

for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against

the United States, or held as witness or otherwise."  Explaining the duty owed by the Bureau of Prisons,

the Ninth Circuit observed:

> [S]ection [4042] provides that the Bureau of Prisons, under the direction of the Attorney General, shall provide for the safekeeping and protection of all persons charged with or convicted of offenses against the United States. It does not impose a duty on any officials who may be responsible to the Bureau of Prisons, and does not establish a civil cause of action against anyone in the event the Bureau's duty is breached.  In other cases, the courts have made it clear that **if the duty imposed by § 4042 is breached, the prisoner's remedy is an action against the United States, under the Federal Tort Claims Act**. *United States v. Muniz*, 374 U.S. 150 (1963); *Cohen v. United States*, 252 F. Supp. 679 (N.D.Ga.1966).

*Williams v. United States*, 405 F.2d 951, 954 (1969) (emphasis added).  Thus, the Court found a federal

prisoner housed in a county jail could not state a claim for a breach of the duty arising under 18 U.S.C.

§ 4042 against the county or its employees operating the jail, but rather the prisoner's "sole right of

action [was] against the United States." *Id.*

However, in *United Scottish Ins. Co. v. U.S.*, 614 F.2d 188, 197 (1979), when evaluating

whether an action under the FTCA could be brought asserting negligence by air traffic controllers, the

Ninth Circuit held, "We have concluded that, pursuant to the Act, courts may not determine

governmental liability without considering the liability of a private person in 'like circumstances'

pursuant to relevant state law."  *United Scottish* recognized the *Williams* holding but determined the

*Williams* holding was a mere starting point in the analysis whether a breach of § 4042 may be address

under the FTCA; it was not a conclusion.  *United Scottish* instructed,

> Thus, while a prisoner's remedy for a breach of the duties prescribed by section 4042 is an action brought pursuant to the Act, *Williams v. United States*, 405 F.2d 951, 954 (9th Cir. 1969), **such actions still require us to discover whether a private individual responsible for the care and protection of another individual would be liable pursuant to state law in the circumstances of the particular case**. This analysis, of course, is analogous to our holding here that the district court must look to state law to determine whether or not an individual who undertakes to inspect another's property could be held liable under the circumstances of this case.

*United Scottish*, 614 F.2d at 198 n. 9, emphasis added.  Likewise, the Court determined that *United*

*States v. Muniz*, 374 U.S. 150 (1963) was not at odds with this holding.  The Court observed,

> In *Muniz*, the Supreme Court considered the possibility that state law cases holding state governments immune from liability for negligent care or protection of prisoners

6

would also bar federal government liability under the Act. In rejecting this approach, the Court focused on the Act's purpose of waiving federal sovereign immunity and concluded that a local rule based on sovereign immunity policies should not be applied: "Just as we refused to import the 'casuistries of municipal liability for torts' in *Indian Towing*, so we think it improper to limit suits by federal prisoners because of restrictive state rules of immunity." *Id*. at 164, 83 S.Ct. at 1859. Having already found that appropriate state negligence law would be applied to prisoners' claims, consistent with the nature of the claim and the activity which produced it, *Id*. at 160-61, 83 S.Ct. 1850, the [*Muniz*] Court, nevertheless, added at this point that "the duty of care owed by the Bureau of Prisons to federal prisoners is fixed by 18 U.S.C. § 4042, independent of an inconsistent state rule." *Id*. at 164-65, 83 S.Ct. at 1859. We believe that this statement should be read as finding a duty inhering in the nature of the custodial relationship, which is established in part by the federal statute and in part by the activity itself. Under this interpretation, the duty stems from state tort law rather than directly from the statute. This reading alone can reconcile the statement with the Court's earlier recognition that "(w)hether a claim could be made out would depend upon whether a private individual under like circumstances would be liable under state law." *Id*. at 153, 83 S.Ct. at 1853. See also *id*. at 165 n.27, 83 S.Ct. 1850.

Thus, though a federal prisoner may bring a lawsuit against the United States, whether a claim may be stated depends upon whether, under state law, a private individual could be held liable in similar circumstances.  Therefore, standing alone, no cause of action under the FTCA exists under § 4042 and, therefore, the Court recommends the Government's motion to dismiss the Third Cause of Action on these grounds, be **GRANTED**.

## C.    Independent contractor exception of the FTCA

The FTCA's waiver is limited by various exceptions, and expressly excludes liability for the actions of "any contractor with the United States."  28 U.S.C. § 2671.  As a result, the United States has not waived immunity from liability for the tortious acts of independent contractors.  *See United States v. Orleans*, 425 U.S. 807, 814 (1976) ("Since the United States can be sued only to the extent that it has waived its immunity, due regard must be given to the exceptions, including the independent contractor exception, to such a waiver.")  The FTCA, and its exceptions, must be "strictly construed" in favor of the Government.  *United States v. Kubrick*, 444 U.S. 111, 117-18 (1979)*; FDIC v. Craft*, 157 F.3d 697, 706 (9th Cir. 1998).  Consequently, "the independent contractor exception to the waiver of sovereign immunity has been construed broadly."  *Robb v. United States*, 80 F.3d 884, 887 (4th Cir. 1996) (citing *Lurch v. United States*, 719 F.2d 333, 338 (10th Cir. 1983), *cert. denied*, 466 U.S. 927 (1984)).

Importantly, however, the independent contractor exception will not apply if the Government controlled and supervised "day-to-day operations."  *Autrey v. United States*, 424 U.S. 944, 957 (9th Cir.

1    2005).  The Court explained, "Because tort liability follows agency principles, the key factor is the

2    extent to which the federal government exercises control over the day to day operations of the entity."

3    *Kuntz v. Lamar Corp*, 385 F.3d 1177, 1184-85 (9th Cir. 2004).  The Ninth Circuit determined "there

4    must be substantial supervision over the day-to-day operations of the contractor," in which case the

5    United States may be held liable because the contractor acted as a federal employee.  *Autrey*, 424 F.3d

6    at 957.

7            Plaintiff asserts that the independent contractor exception should not apply because the United

8    States "maintained exclusive control over decisions as to whether structural changes should be

9    implemented." (Doc. 37 at 7.)  According to Plaintiff, "despite knowledge of preventative measures

10   that involved changing the on-site structures at TCI . . . the USA negligently determined to instead [d]o

11   nothing other than quickly diagnose and treat individuals after they became infected and after they

12   developed disseminated cocci." (*Id.* at 7-8, emphasis omitted.)  Plaintiff's First Cause of Action

13   against the Government is for negligence "based upon the USA's failure to provide Plaintiff with safe

14   and habitable housing while incarcerated at TCI." (*Id.* at 8.)  Plaintiff explains:

15           This includes allegations based on (a) the USA's exclusive control over the capacity to
             make structural changes to the TCI site or building on the TCI site, and the USA's
16           failure to do so (which it was necessary in order to provide Plaintiff with safe and
             habitable housing); and (b) the USA's failure to warn Plaintiff, prior to his transfer to
17           TCI, of the Valley Fever-related risks posed to Plaintiff in that facility, depriving him
             of the opportunity to seek to avoid that transfer or designation or take other measures,
18           such as staying indoors whenever possible, to avoid acquisition of the chronic illness he
             now carries.

19

20   (*Id.*)  Similarly, the Third Cause of Action is for negligence "based on the USA's breach of its duty of

21   care to Plaintiff under 18 U.S.C. 4042(a).  (*Id.* at 9.)  According to Plaintiff, the Third Cause of Action

22   is meant to address:

23           (a) the USA's failure to make structural changes to the TCI site and its buildings to
             reduce Plaintiff's exposure to the Valley Fever Causing spores; (b) the USA's failure to
24           warn Plaintiff of the Valley Fever-Related risks at TCI prior to his transfer to TCI; and
             (c) the USA's failure to protect Plaintiff when the USA developed and implemented its
25           policy to address the Valley Fever epidemic at TCI (and forewent protecting uninfected
             inmates, and instead limited its efforts to early diagnosis and treatment of inmates that
26           were already infected).

27   (*Id.* at 9.)

28           Plaintiff acknowledges this Court determined previously that similar claims were barred by the

                                                         8

independent contractor exception in *Edison v. USA*, Case No. 1:12-cv-2026-AWI-JLT, 2013 U.S. Dist. LEXIS 128503 (E.D. Cal. Sept. 9, 2013).  However, Plaintiff asserts that "many of the[] facts were not present in the complaint in *Edison*."  (Doc. 37- at 15.)  In addition, Plaintiff observes that the Central District determined the Government had a duty to warn Plaintiff of the risk of Valley Fever in *Fekrat v. USA*, Case No. 2:13-00594-MMM-PJW.  (*Id.* at 15-16, citing *Fekrat* at 21:11-13, 21:26- 22:2 (C.D. Cal. Aug. 6, 2013)).[1]

On the other hand, the Government argues the independent contractor exception of the FTCA applies, because it did not maintain control over the operations of TCI.  (Doc. 30-1 at 9-10.)  The Government observes that Plaintiff "agrees that MTC 'operated Taft,' and that the United States 'contracted with third parties (including defendant MTC) to handle the majority of the day-to-day operations of Taft.'"  (*Id.* at 10, quoting Doc. 23, ¶¶ 3, 30.)  In addition, the Government argues Plaintiff "does not allege that the United States exercised the type of substantial supervision or detailed control over daily operations that would be required to overcome the independent contractor exception; nor did the United States, in fact, exercise that type of supervision or control at Taft CI at any time relevant to this case."  (*Id.*, citing Harvey Decl. ¶¶ 42-43, 47, 49, 51, 56; Straus Decl. ¶¶ 17-18, 45.)

Significantly, the Government has presented evidence that the United States delegated its responsibilities to MTC related to health services and management of TCI.  Doug Martz, Chief of the Privatized Corrections Contracting Section of the Acquisitions Branch, Administrative Division of the BOP, reports: "In August of 2007, the BOP awarded the contract for the operation and management of TCI… to Management & Training Corporation."  (Doc. 30-2, Martz Decl. ¶ 21.)  Mr. Martz asserts

---

[1] The Court declines to adopt the rationale of *Fekrat v. United States of America*, Case No. 13-cv-00594 which allowed that plaintiff to proceed on a failure to warn claim against the Government. For this proposition, *Fekrat* relied upon authority that simply does not support this claim.  For example, *Fekrat* relied upon *Noel v. United States*, 893 F.Supp.1410, 1421 (N.D. Cal. 1995).  However, in *Noel* the contract with the concessionaire did not seek to impose the duty to warn as to conditions of the property on the contractor.  Likewise, *McGarry v. United States*, 370 F.Supp. 525, 565 (D. Nev. 1973) aff'd in part, rev'd in part, 549 F.2d 587 (9th Cir. 1976), stands for the proposition that the Government may be held liable for breaching a nondelegable duty of care.  *McGarry* recognized that a nondelegable duty will arise generally where the work for which the contractor is hired constitutes a highly dangerous activity. The other cases, *United States v. Pierce*, 235 F.2d 466 (6th Cir. 1956) and *United States v. Haskins*, 395 F.2d 503 (10th Cir. 1968), cited by *McGarry* and referenced by *Fekrat*, hold similarly to *McGarry*.  Here, however, there is no claim—and no facts to support one—that the duty to warn about the risks of Valley Fever was nondelegable and, of course, the contract between the BOP and MTC *did delegate* all obligations toward inmate health services, including inmate health education, and inmate orientation, to MTC. (Harvey Decl. ¶ 17; Edison v. USA 1:12-cv-02026, Doc. 43-4 at 41).  Thus, the court finds that the independent contractor exception precludes liability as to the claim that the Government failed to warn of the risks of Valley Fever.

that pursuant to the terms of the contract between MTC and the Government, "MTC determines the day-to-day procedures and practices" in place at TCI.  (*Id.*, ¶ 22.)  He reports that the BOP has not hired individual MTC employees, lacks the authority to fire MTC employees, and "BOP personnel … do not physically supervise individual MTC employees in their day-to-day activities at TCI."  (*Id.*, ¶¶ 23-24, 27.)

Glenn Harvey, who worked at TCI as Senior Secure Institution Manager with the BOP, reports that his job duties included supervising two other BOP employees and "observing the activities of contractor employees throughout TCI." (Doc. 30-2, Harvey Decl. ¶¶ 1, 11.)  Mr. Harvey reports he "would also observe and speak to the inmates."  (*Id.*, ¶ 11.)  According to Mr. Harvey, he "had no authority to assign work to GEO or MTC employees or to transfer work from … MTC employees," and "had no authority to hire, supervise, or fire GEO or MTC employees." (*Id.*)  Although Mr. Harvey retired in June 2009, he reports that through that date, the office where the BOP employees worked "was outside of the barbed wire fence surrounding the correctional institution." (*Id.*, ¶ 15.)  He asserts that "inmate education and orientation were the responsibility of MTC." (*Id.*, ¶ 31.)  Further, Mr. Harvey reports other MTC responsibilities included inmate medical and health services, safety, security and recreation—including "[t]he determination of whether inmates could use the outdoor recreation area."  (*Id.*, ¶¶ 27, 29, 37.)  He asserts, "No BOP employee had the authority to close the recreation yard. That was a decision that could only be made by GEO or MTC."  (*Id.*, ¶ 49.)

Mr. Harvey's statements are corroborated by those of Tony Strauss, who assumed the position of Senior Secure Institution Manager with the BOP after the retirement of Glenn Harvey, and held the position during Plaintiff's incarceration.  (*See* Doc. 30-2, Strauss Decl. ¶¶ 2, 4.) Specifically, Mr. Strauss reports "[t]he duties and responsibilities of [his] position as Senior Secure Institution Manager at TCI Taft were to monitor MTC's performance of their contract obligations and to supervise the Secure Institution Monitor and the Inmate Systems Specialist, both of which… were BOP employees." (*Id.*, ¶ 12.)  Further, Mr. Strauss asserts "the day-to-day operations of TCI Taft were the responsibility of MTC employees," and he lacked authority "to hire, supervise, or fire." (*Id.*, ¶¶ 14, 17.)  He reports that "no BOP employee was responsible for inmate safety and security, building and grounds maintenance, sanitation, health services, inmate orientation, inmate education, inmate recreation… or

10

1    any other aspect of the day-to-day operation of TCI Taft." (*Id.*, ¶ 18.)

2           Although Plaintiff alleges the Government was responsible for making "structural changes…

3    such as paving over earth-covered areas, covering up open-air passageways, or providing enclosed

4    passageways," the evidence shows such responsibilities within the province of the duties delegated to

5    MTC to maintain the buildings and grounds. (*See, e.g.*, Doc. 30-2, Strauss Decl. ¶ 38, observing MTC

6    had "the air filters in the ventilation system through TCI Taft … replaced more frequently" and used

7    "HEPA vacuums … to vacuum the overhead sprinklers where dust was accumulating"). Further, MTC

8    was responsible for inmate orientation and health, and warned inmates regarding the risks of Valley

9    Fever with brochures at the Health Services Unit and flyers "posted on the bulletin boards outside the

10   bathrooms in the inmate housing units." (Doc. 30-2, Strauss Decl. ¶¶ 18, 41-43.) The BOP, on the other

11   hand, was not responsible for maintenance, sanitation, health services, health education or inmate

12   orientation. Nor were the BOP employees responsible, or authorized, to make decisions regarding

13   when inmates could be in the yard. While the BOP required compliance with its contract terms and

14   federal regulations, this did not rise to the level of "substantial supervision over the day-to-day

15   operations" of MTC. *See Autery*, 424 F.3d at 957. Consequently, MTC was a contractor of the

16   Government, and the independent contractor exception should apply to Plaintiff's negligence claims

17   under the FTCA.

18   **IV.     Findings and Recommendations**

19          Because the Government delegated the duties of inmate orientation, health services, and

20   maintenance—among other responsibilities—to MTC, and the retention of some control over TCI does

21   not rise to the level of controlling or supervising the day-to-day operations, Plaintiff has failed to meet

22   his burden to demonstrate the Court has subject matter jurisdiction over his claims. *Kokkonen*, 511

23   U.S. at 377; *Autery*, 424 F.3d at 957.

24          Based upon the foregoing, **IT IS HEREBY RECOMMENDED:**

25          1.      The Government's motion to dismiss pursuant to Rule 12(b)(1) be **GRANTED**; and

26          2.      Plaintiff's First and Third Causes of Action be **DISMISSED**.

27          These Findings and Recommendations are submitted to the United States District Judge

28   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Rule 304 of the Local

11

Rules of Practice for the United States District Court, Eastern District of California. Within 14 days after being served with these Findings and Recommendations, any party may file written objections with the court.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Any response thereto shall be filed within 7 days after service of the Objections. The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated:   **March 18, 2014**                              **/s/ Jennifer L. Thurston**
                                                    UNITED STATES MAGISTRATE JUDGE