1  Raymond P. Boucher, State Bar No. 115364
    *ray@boucher.la*
2  Hermez Moreno, State Bar No. 72009
    moreno@boucher.la
3  Milin Chun, State Bar No. 262674
    *chun@boucher.la*
4  Brian M. Bush, State Bar No. 294713
    *bush@boucher.la*
5  **BOUCHER LLP**
   21600 Oxnard Street, Suite 600
6  Woodland Hills, California 91367-4903
   Tel:   (818) 340-5400
7  Fax:   (818) 340-5401

8  Jason K. Feldman, SBN 213386
    *jason@feldmanwallach.com*
9  Ian Wallach, SBN 237849
    *iwallach@feldmanwallach.com*
10 **FELDMAN & WALLACH**
   225 Santa Monica Blvd., 11th Floor
11 Santa Monica, CA 90401
   Tel: (310) 577-2001
12 Fax: (310) 564-2004

13 Attorneys for Plaintiff RICHARD
   NUWINTORE
14

15              **UNITED STATES DISTRICT COURT**

16   **EASTERN DISTRICT OF CALIFORNIA, FRESNO DIVISION**

17

18  RICHARD NUWINTORE,                    Case No. 1:13-cv-00967-AWI-JLT

19              Plaintiff,                **THIRD AMENDED COMPLAINT**

20        v.                              Federal Tort Claims Act
                                          Negligence
21  UNITED STATES OF AMERICA,
    MANAGEMENT & TRAINING                 Jury Trial Demanded
22  CORPORATION, AND JOHN DOES
    1-9,
23                                         The Hon. Hon. Anthony W. Ishii
            Defendants.
24                                         Trial Date:        None Set

25

26

27

28

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Plaintiff Richard Nuwintore, an individual (hereinafter referred to as "Plaintiff"), by and through his attorneys of record, Feldman & Wallach, LLP and Boucher, LLP brings his third amended complaint for money damages against the UNITED STATES OF AMERICA, MANAGEMENT & TRAINING CORPORATION, AND JOHN DOES 1-9, and alleges:

## I.
## THE PARTIES

1.      Plaintiff is a resident and citizen of the State of California, County of Los Angeles. Plaintiff brings this complaint for money damages for personal injuries suffered as a result of the negligent and wrongful acts and omissions of the officers, agents and employees of the Defendants UNITED STATES OF AMERICA, employed by the Federal Bureau of Prisons, MANAGEMENT & TRAINING CORPORATION, and JOHN DOES 1-9.

2.      Defendant USA operates and controls the Federal Bureau of Prisons (sometimes hereinafter referred to as the "BOP"), which is charged with maintaining custody of sentenced federal prisoners in its many correctional facilities throughout the United States of America, and whose officers, agents and/or employees negligently and recklessly exposed Plaintiff to the potentially deadly disease known as Coccidioidomycosis (also known as "Valley Fever", "San Joaquin Valley Fever", and "Cocci") at its prison facility in Kern County, California, known as Taft Correctional Institution (or "TCI").

3.      Defendant MANAGEMENT & TRAINING CORPORATION is a corporation licensed to practice in the State of California that operated TCI at times relevant to this Complaint and whose officers, agents and/or employees negligently and recklessly exposed the Plaintiff to the potentially deadly disease known as Coccidioidomycosis at TCI.

4.      Upon information and belief, Defendant MANAGEMENT & TRAINING CORPORATION is a corporation with its principal place of business in Utah.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

5.     Defendants JOHN DOES 1- 9 are corporations or individuals who, per contract with Defendant USA, have operated TCI at any time relevant to this Complaint.  The identities of these John Doe defendants are not presently known to Defendant as this information is in the exclusive control of Defendant MANAGEMENT & TRAINING CORPORATION and Defendant USA, and include, but are not limited to, other corporate entities owned by, under the control of, controlled by, or otherwise associated with Defendants MANAGEMENT & TRAINING CORPORATION and the UNITED STATES OF AMERICA.

## II.
## JURISDICTION

6.     This action arises from, and this Court has jurisdiction over this action by virtue of the Federal Tort Claims Act, 28 U. S. Code §§ 1346(b), 2671, et seq.  The Plaintiff has been injured by the negligent or wrongful acts and omissions of the officers, agents and/or employees of the Defendant USA, acting in the course and scope of their employment.

7.     This Court also has jurisdiction over the claims against Defendant MANAGEMENT & TRAINING CORPORATION, and Defendants JOHN DOES 1-9 as such claims are inextricably-intertwined with and ancillary and, in large part, arise from the same set of operative facts to Plaintiff's claims against Defendant USA and, as such, can only be resolved in Federal Court.

8.     This Court also has jurisdiction over the claims against Defendant MANAGEMENT & TRAINING CORPORATION, and Defendants JOHN DOES 1-9 on the grounds of diversity pursuant to 28 U.S.C. § 1332(c).

9.     On May 20, 2016, the Ninth Circuit Court of appeals determined that jurisdiction was not precluded under 28 U.S. Code § 2671 ("the independent contractor exception").  *Edison v. United States of America, et al.*, 822 F.3d 510 (9th Cir. 2016). The deadline for a rehearing on that decision passed on July 5, 2016.

10.     The acts and omissions of which Plaintiff complains took place in the State of California.  Accordingly, the law of the State of California controls this action with respect to liability and damages.  28 U.S.C. §§ 1346(b)(1) and 2674.

11.     This suit is timely filed.

12.     Plaintiff has exhausted his administrative remedies.  Plaintiff has received the final denial of his claim from the U.S. Department of Justice Federal Bureau of Prisons stating that he may bring suit against Defendant USA in an appropriate U.S. District Court not later than six months from the date of mailing of the letter stating the final denial of his claim.  That letter is dated November 21, 2012.

13.     Upon information and belief, there is additional information that has come to light since the filing of Plaintiff's administrative claim justifying damages in excess of his administrative claim in an amount to be proven at trial.

### III.
### VENUE

14.     Venue is proper in the Eastern District of California, because the acts and omissions complained of occurred in this district.  28 U. S. Code §§ 1402(b) and 1391(e)(1)(B).

### IV.
### THE FACTS GIVING RISE TO THE COMPLAINT

**A.**     **The Disease:**

15.     Coccidioidomycosis has long been known as a serious infectious disease which is contracted by the inhalation of an airborne fungus, Coccidioides immitis, which is endemic in the soil of various areas of the Southwest.  Nowhere is it more prevalent than in Kern County in the San Joaquin Valley of California.

16.     According to the Center for Disease Control and Prevention ("CDC"), "[s]ymptomatic coccidioidomycosis, which occurs in approximately 40% of all infections, has a wide clinical spectrum, including mild influenza-like illness, severe pneumonia, and disseminated disease." The disseminated form of the disease — that is, when the fungus spreads from the lungs to the body's other organs — is the most

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

serious. Disseminated cocci may cause miliary tuberculosis, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis. In some cases, surgery may be the only available treatment. The antifungal Fluconazole is effective against most cocci infections, but it is a daily treatment that must be continued for the rest of the patient's life. Individuals of certain races, especially African-Americans and Filipinos, are at significantly higher risk of contracting disseminated cocci than the rest of the population. If left untreated and allowed to progress to meningitis, the disseminated form of the disease is uniformly fatal.

17.     It is generally accepted that less than 5% of Coccidioidomycosis infections disseminate and cause miliary disease, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis.  However, it is well known that disseminated Coccidioidomycosis is progressive, painful, and debilitating, and that it is uniformly fatal once it progresses to meningitis, if left untreated.  Surgical excision of tissue and bone is the only medical response for some extrapulmonary infections of Coccidioidomycosis.

18.     Certain triazole compounds, including Fluconazole (400 mg/day), have been found to be effective in treating most presentations of Coccidioidomycosis; but the drug must be taken daily, and due to previously experienced high relapse rates when azole therapy is stopped, lifelong treatment with Fluconazole is recommended.  And Fluconazole has side effects that are very difficult for many to tolerate.

19.     At no time pertinent to this action was there an effective human vaccine available to prevent the disease Coccidioidomycosis, and none exists today.  And once contracted, there is no iatrogenic cure for the disease.

20.     Epidemiological studies have established that individuals of certain races are at higher risk for developing the disseminated form of Coccidioidomycosis, particularly African-Americans and Filipinos, for whom the risk is greatly increased. Studies establish that those of African descent are up to 14 times more likely to develop the severe form of the disease.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

21.    Newton Kendig, the Chief Medical Officer for the BOP, opined that this is potentially the result of the absence of a "host-immunity" – a capacity to become infected by not produce symptoms – that is rarely present in individuals that have never previously been exposed to the area.

22.    Tests to determine the presence of this "host-immunity" were available at all times relevant to this Complaint, but never made available to anyone arriving at TCI to determine their potential risk to exposure.

**B.    The Taft Correctional Facility:**

23.    TCI is a federally-owned privately-operated prison.  It is owned by Defendant USA and day-to-day operations are handled by Defendant MTC.

24.    There are more incidents of cocci-infections at TCI than all other federal prisons combined.

25.    Around 2007, TCI began to primarily house inmates awaiting deportation – resulting in the export of many individuals who had become infected with Cocci.

**C.    The Rise In Cocci Infections At TCI Commencing In 2003:**

26.    Taft is located in a region with one of the highest concentrations of the cocci fungus. In 2003, the number of prisoners infected at Taft reached epidemic numbers. Infections reportedly more than doubled between 2003 and 2005. The warden of Taft admitted there were "more cases of diagnosed Valley Fever [at TCI] than in all other federal prisons combined." Several prisoners subsequently developed the disseminated form of the disease, and at least one died.

27.    In response to the outbreak, Defendant USA, through the BOP, contacted the Center For Disease Control ("CDC"). Together, the agencies were to develop a plan addressing the epidemic at Taft. Although the original plan included protocols for prevention, in addition to diagnosis and treatment, the BOP subsequently reversed course, abandoning its prevention efforts to focus exclusively on early diagnosis and treatment. Except for a small population of uninfected but immunocompromised

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

prisoners, the final policy provided for only those individuals already infected with cocci.

28.    While formulating this policy, BOP officials sent an internal email requiring that all CDC and BOP employees coordinate policy efforts through the office of the BOP's medical team. The BOP specifically excluded its contractors from participating in policy development, mandating that "all CDC and BOP employees cease discussions with other parties (including any third-party contractors . . .)."

29.    Defendant USA chose not to close the facility.

30.    Defendant USA chose to continue to send inmates of African descent, Filipino descent, and those with health issues that rendered them likely to develop the more serious form of Cocci to TCI.

31.    Additionally, it was known to MTC that African-Americans are at a substantially higher risk of acquiring the most deadly form of the disease (disseminated cocci). MTC had its own "transfer-out" policies that identified the higher likelihood of acquiring disseminated cocci possessed by those of African descent, but did not categorically exclude inmates or immediately mandate transfer or take any measures at all to reduce the likelihood of infection. Instead, MTC maximized the profits it could make from housing the inmates, minimized the expenses associated with protecting them, and consciously let inmates such as Plaintiff fall ill.

32.    Neither Defendant MTC nor Defendant USA provides post-release medical care for inmates who became infected with cocci as a result of their incarceration at TCI.

**D.    <u>Rates of Cocci Infections at TCI Compared to Those of Surrounding Areas</u>:**

33.    Between 2009 and 2011, TCI had a population of approximately 2400 inmates. During that same time period, TCI recorded 59 new infections, and experienced on average 6.5 infected inmates per month. The infection rates at TCI for 2009, 2010 and 2011 were, respectively: 0.13%, 0.59% and 1.20%.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

34.     Conversely, infection rates for the surrounding community are kept by the Kern County Department of Health. Between 2009 and 2011, infection rates were reported to be: 0.072% in 2009, 0.246% in 2010, and 0.323% in 2011.

35.     Accordingly, studies examining infection rates have shown that infection rates at TCI were higher than Kern County in all the years sampled above. In 2010 the rate was over double that of Kern County. In 2011, it was approximately four times higher.

36.     Additionally, the "spike" in infections that was experienced by both TCI and Kern County in 2010 and 2011 hit TCI exponentially harder than it did Kern County. In 2010, the Kern County rate increased by 241.7% over the previous year, 2009. Conversely, at TCI, the rate increased by 353.8%. The increase from 2009 to 2011 is even more stark. In Kern County, the rates increased during that time period by 348.6%. At TCI, the increase from 2009 to 2011 was 823%. This is likely due to the hypersensitivity of the population at TCI as compared to that of the surrounding areas, and the lack of implementation by TCI of adequate cocci preventative measures and mitigation, as well as the lack of any meaningful education or warning systems at TCI concerning cocci.

**E.     Warnings To Inmates:**

37.     Prior to an inmate's arrival at TCI, neither Defendant USA, nor any third parties, provided the inmates any warnings about the cocci-related risks at TCI.

38.     Upon arrival at TCI, minimal warnings were provided to the inmates in the form of leaflets. These warnings did not provide any potential recommendations -- aside from avoiding the area (which was not a realistic recommendation for these inmates) -- as to how to avoid infection, and did not inform the inmates that they could seek administrative relief to be transferred to another facility to avoid infection. Nor did these warnings emphasize or clarify the heightened risk that inmates of African descent, Filipino descent, or with certain medical conditions have to developing disseminated cocci.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

39.    Defendant USA's failure to warn these individuals deprived these individuals of the chance to seek judicial or administrative relief to avoid being housed at TCI; and of their chance to modify their behavior to decrease their likelihood of infection (for example, by staying inside or demanding masks or by not engaging in work or recreational activities that provided them greater exposure to the dust that carries the cocci spores).

**F.    Contractual Obligations Between The Parties:**

40.    Defendant USA contracted with Defendant MTC to control the day-to-day operation at TCI.

41.    Defendant USA never contracted any entity for the specific purpose of controlling the spread of cocci infections at TCI.

42.    When contracting with Defendant MTC to operate TCI, Defendant USA retained certain duties that relate to the protection of inmates from cocci infections.

43.    Among the duties retained by Defendant USA was control over structural changes.  Defendant USA maintained control over the implementation of all structural changes. Page 38 of the contract between the Defendant USA and Defendant MTC provides as follows, in relevant part: "No modifications or additions to existing buildings, mechanical or utility systems shall occur (other than routine maintenance or replacement of components) without prior approval of the CO.  The government reserves the right to construct additional buildings on its property and/or expand the capacity of existing buildings. The contractor shall cooperate to the fullest extent possible should the government exercise this right."

44.    Despite maintaining control over structural changes at TCI, Defendant USA failed to implement any structural changes whatsoever.

45.    None of the Defendants provide any health-care services that assist those infected with Cocci while incarcerated at TCI after their departure or release from custody, leaving these individuals to fend for themselves.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

9

Case No. 1:13-cv-00967-AWI-JLT

THIRD AMENDED COMPLAINT

**G.**   **Availability And Implementation Of Preventative Measures At TCI:**

46.   Preventative measures that can effectively combat the spread of cocci have been known in the medical and other communities since the 1940s.  Such measures were discussed in a 1946 article "article EFFECT OF SEASON AND DUST CONTROL ON COCCIDIOIDOMYCOSIS, JAMA 132:14" by Charles E. Smith, M.d.; Rodney R. Beard, M.D.; Major H. G. Rosenberger; and Major E. G. Whiting. These measures include watering down dusty areas, planting grass or shrubs over dusty areas, and keeping individuals inside during windy conditions.  These measures have been shown to reduce the spread of infection by ½ to 2/3rds.

47.   In 2007, Dwight Winslow, MD submitted recommendations to Coccidioidomycosis mitigation in prisons in the hyperendemic areas in California. The California Department of Corrections and Rehabilitation (CDCR) and the California Department of Health Services (CDHS) implemented several actions designed to reduce inmate and staff exposure to Coccidioidomycosis and mitigate its harmful effects. The recommendations included deferring any new construction that will lead to additional prisoners being housed in hyperendemic areas and providing an indoor recreation area for inmates to use during high wind/dust events; and excluding certain inmates from being housed in a facility that is in the hyperendemic area including those infected with HIV.  These measures have not been implemented at TCI.[1]

48.   The measures identified above have been commonly employed in prisons and other facilities in the San Joaquin Valley, near TCI, since the mid-2000s, and are still being employed today.

49.   Furthermore, the measures identified above, along with other measures (such as watering down automobiles that are entering facilities; decreasing dust-generating activities; watering down dust-covered areas and educating the inmates) are

---

[1]See full article at:
http://www.cphcs.ca.gov/docs/resources/RecommendationsForValleyFever_0607.pdf

THIRD AMENDED COMPLAINT

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1  commonly employed at other industrial facilities near Taft, but, for some reason, are not

2  employed at Taft.

3      50.    Upon information and belief, despite the high incidences of cocci

4  infections at Taft, Defendants have never employed an environmental hygienist to

5  evaluate TCI for measures that could reduce the spread of infection.

6      51.    MTC engaged in various plumbing projects on the site, knowing that

7  disturbing the soil would place the spores into the air, potentially infecting inmates, but

8  took no precautions to protect inmates such as Plaintiff.

9      52.    MTC engaged in gardening projects on the site, knowing that disturbing

10  the soil would place the spores into the air, potentially infecting inmates, but took no

11  precautions to protect inmates such as Plaintiff.

12      53.    Moreover, MTC stopped watering the grass prior to Plaintiff's arrival,

13  effectively removing the *only* protection against the spread of cocci infection that was

14  in place at TCI. Had MTC continued to water the grass, and not engaged in this cost-

15  saving measure, there would have been a much higher chance that Plaintiff would not

16  have acquired disseminated cocci.

17  **H.**    **Notice Of The Likelihood That TCI Inmates Would Acquire Infections Of The Severe Form Of The Disease:**

18

19      54.    In June of 1994, the U. S. Centers for Disease Control and Prevention

20  (commonly referred to as the "CDC"), in its publication called the Morbidity and

21  Mortality Weekly Report (MMWR) issued an article prepared by a group of physicians

22  and scientists preeminent in the field of infectious disease, entitled

23  "Coccidioidomycosis -- California, 1991-1993." The article reported on the

24  devastating impact of Valley Fever in California, as well as the fact that in the years

25  1991 through 1993, 70% of the reported cases of coccidioidomycosis in California

26  arose from Kern County, in the San Joaquin Valley. [See full article at:

27  http://www.cdc.gov/mmwr/preview/mmwrhtml/00031453.htm]

28

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

55.     In September of 1996 Doctors Theo N. Kirkland and Joshua Fierer, both of the University of California, San Diego, School of Medicine, published an article in Emerging Infectious Diseases (another publication of the CDC), entitled "Coccidioidomycosis: A Reemerging Infectious Disease."  In this article Doctors Kirkland and Fierer comment on the Valley Fever epidemic of 1991-1993 reported above, and state that: "Kern County, in the San Joaquin Valley, California, is one of the most highly coccidioidomycosis-endemic regions."   They also point out later in the article that: "Simple environmental measures, such as planting grass or paving roads in highly populated areas, decrease the amount of airborne dust and lower the risk for coccidioidomycosis.  These measures do not necessarily eradicate C[occidioides] immitus from the soil but lower the risk for airborne dispersion of the organism. At present, no practical method exists for eliminating C[occidioides] immitus from the soil."   Drs. Kirkland and Fierer also discuss in their article the efforts to develop a vaccine to prevent Coccidioidomycosis, which as of the date of the article had not been successful.[2]

56.     In January 2004 the BOP itself, i.e., the Chief of the BOP's Office of Quality Management, in Washington, D.C., through the BOP's Medical Director, issued a system-wide memorandum for all BOP Health Services Staff, which included a "Risk Management Alert" for Valley Fever.  The alert described the disease as follows: "Valley Fever is another name for the sometimes deadly infection coccidioidomycosis." The risk management alert goes on to explain [inexactly] that: "It is called valley fever because the organism that causes it is commonly found in the soil of the southwestern United States Of America, Mexico and parts of Central and South America." (Actually, the term arose from the high prevalence of the disease in the San Joaquin Valley of California.)  The BOP alert includes the recommendation that: "Persons at

---

[2] See the full article at: http://www.cdc.gov/ncidod/eid/vol2no3/kirkland.htm

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1   risk for valley fever should avoid exposure to dust and dry soil in areas where valley

2   fever is common."

3   **I.    Prior Litigation Related To Cocci-Infections At TCI, Giving**
    **Defendants Further Notice Of The Cocci-Related Harms Posed To**
4   **Inmates At TCI:**

5      57.    In June of 2002, federal inmate Kevin Walker filed a claim against

6   Defendant USA for damages under the Federal Tort Claims Act (as well as Bivens

7   claims against various entities and individuals), alleging negligence on the part of the

8   Government for having transferred him in December 1999 to TCI, a facility that was

9   constructed by Defendant USA with knowledge that the soil upon which it was built

10  was contaminated with fungal spores that are known to cause Valley Fever. *Walker v.*

11  *United States Of America Of America*, 2007 WL 1577687, Case No. 1:02-cv-05801-

12  AWI (E.D. Cal. 2007) (Ishii, D.J.), at *4.  Walker also alleged that the Government

13  knew about the presence of the fungal spore when it began transferring federal inmates

14  to TCI in late 1997, but it did nothing to prevent inmates from being exposed to Valley

15  Fever.  *Walker v. United States Of America*, 2008 WL 2074475 (E.D. Cal. 2008)

16  (Austin, M.J.), at *2.  Walker alleged that the BOP vetoed efforts by the private

17  contractor operating the facility to plant grass to mitigate the dusty conditions.  This

18  case was ultimately dismissed but put the defendants in this action on notice of the

19  likelihood of exposure to cocci infection that was imposed on inmates at TCI

20     58.    In 2009, a similar action to this was commenced alleging that Defendant

21  USA failed to adequately protect one inmate from acquiring valley fever, which was

22  ultimately resolved (*Panah v. United States Of America*, CV-096535) ("the CV-096535

23  Action").  This action provided further notice to the defendants of the risk of cocci

24  infection at TCI.  Still no preventative measures were implemented.

25     59.    In the CV-096535 Action, the Court determined that Plaintiff's asserted

26  claims of negligence against Defendant USA were not barred by the discretionary

27  function exception to the Federal Tort Claims Act. the risk of cocci-infections to

28  inmates at Taft or to make recommendations.

**J.    Available Courses Of Action:**

60.    Based on the above, Defendants had indisputable knowledge that this disease was potentially deadly, and that any federal inmate assigned to TCI was in danger of contracting the disease due to its physical location in the San Joaquin Valley amidst desert and agricultural terrain that generated the dust-borne spores of Coccidioides immitis.  The only prudent courses open to the BOP were: (1) provide greater protection, housing, or removal to any inmate at TCI who did not have a positive coccidioidin skin test indicating immunity; (2) shut down the facility as too dangerous for human habitation; or (3) implement the common and available preventative measures to protect all non-immune inmates from exposure to the dust-borne disease.  Otherwise, the incarceration of human beings at TCI was the equivalent of conducting a human medical experiment on the inmates, without their consent. While the great percentage of inmates might be expected to survive the disease, for an unacceptable percentage of inmates, assignment to TCI was a potential death sentence.

**K.    Plaintiff Richard Nuwintore:**

61.    On July 5, 2011, Plaintiff was sentenced to serve fourteen (14) months in federal prison. Plaintiff's Registration Number is 16967-097. Upon entering federal custody, Plaintiff had not previously been exposed to the disease Coccidioidomycosis. Plaintiff did not travel to the San Joaquin Valley for business or pleasure at any time prior to his assignment to TCI by the BOP, on or about August 4, 2011.

62.    Prior to his assignment to TCI, Plaintiff was in reasonably good health.

63.    Plaintiff is of African descent.

64.    While the Plaintiff was incarcerated at TCI, Defendants failed to take any particular measures to protect the inmates at TCI from inhaling the naturally occurring airborne dust generated by the desert winds and nearby agricultural activities. Even worse -- Defendant MTC terminated the only preventative measure that was in place (ground cover) as it was cost-effective to not water the grass or provide a suitable replacement for protection. Plaintiff was not provided any special protective breathing

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

14

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

masks or other devices, and to his knowledge there was no special air conditioning equipment employed by the facility to filter out the dust occurring in the local environment. Nor was there any prohibition of outdoor activities during dusty conditions. Nor was anything done to keep the dust that forms the basis of the facility covered with grass or shrubs. Nor was that dust ever watered down or oiled down. Nor were inmates kept inside during windy conditions. Nor were any structural changes implemented (and none had been implemented) to reduce the exposure of plaintiff to the cocci spores. As a result of these errors, Plaintiff contracted disseminated cocci.

65.     Plaintiff was diagnosed with disseminated cocci on or about September 2011. Plaintiff's symptoms included a high temperature, constant coughing, loss of appetite, night sweats and chills, drastic weight loss, difficulty breathing, chest pain, open sores on his body, weakness and fatigue, among other symptoms. Plaintiff's very high Complement Fixation Titer evidenced dissemination.

66.     Plaintiff has been released from BOP custody.

67.     As a result of Plaintiff's valley fever infection, Plaintiff will require lifetime medical supervision, treatment, and in all likelihood, medication.

68.     It is anticipated that Plaintiff's future medical expenses to care for this infection can range from $210,000.00 to several million dollars.

69.     There is no cure presently available for Plaintiff's medical condition.

70.     As a result of his infection, Plaintiff's quality of life and enjoyment of life has severely deteriorated. His life expectancy may have been decreased considerably. Plaintiff experiences severe physical pain and suffering from the various symptoms of the disease known as San Joaquin Valley Fever, when he first contracted the illness; and continues to experience physical discomfort over time, with exacerbated episodes of illness, as mentioned above. He will undoubtedly continue to experience similar pain and suffering in the future.

71.     Further, Plaintiff must now live with the anxiety and dread that he has the disseminated form of coccidioidomycosis, which could cause an agonizing course of

progressive sickness and premature death, should he for any reason be unable to continue his daily regimen of 400 mg of Fluconazole to suppress the disease's natural course, and maintain regular access to medical professionals familiar with the disease, who can continue the careful monitoring and treatment necessary to keep his Valley Fever in check. He will never be "cured" of Coccidioidomycosis. The best he can hope for is an uneasy truce with the disease, with the help of prescription drugs and knowledgeable doctors. Plaintiff further lacks any financial means to arrange for and provide such treatment.

**L.    Prior Rule 12 Motions In This Action:**

72.    On April 10, 2013, Defendant USA moved to dismiss this action asserting that the Court lacked jurisdiction under the independent contractor exception of the Federal Tort Claims Act (Dkt. 43)

73.    On September 9, 2013, the Court granted the motion to dismiss of Defendant USA. (Dkt. 66) and denying Plaintiff leave to amend.

74.    Plaintiff timely appealed.

75.    On May 20, 2016, the Ninth Circuit Court of Appeals reversed the dismissal and directed the trial court to allow claims asserted herein to proceed against Defendant USA and to grant Plaintiff leave to amend.  *Edison v. United States Of America, et al.*, 822 F.3d 510 (9th Cir. 2016).  The newly-asserted causes of action below are asserted to clarify Plaintiff's claims following the Circuit Court's guidance.

**V.**
**FIRST CAUSE OF ACTION**
**AGAINST DEFENDANT UNITED STATES OF AMERICA**

**Negligence / Landowner**

**-Failure to Warn-**

76.    Plaintiff hereby incorporates by reference the paragraphs asserted above, as if set forth herein in full.

77.    At all times pertinent to this action, Defendant USA, through its agents, officers and employees acting within the scope of their offices and employment, owed a

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1  legal duty to protect inmates entrusted to its care from unreasonable risk of cocci

2  infection at TCI; a duty which included providing prisoners with adequate warnings

3  concerning the risks of cocci infection at TCI.

4  78.  California law imposes a general duty of care on a landowner to avoid

5  harm to others that result from property it owns.  Cal. Civ. Code § 1714(a). *See*

6  *also Kinsman v. Unocal Corp.*, 37 Cal. 4th 659, 36 Cal. Rptr. 3d 495, 123 P.3d 931,

7  938-39 (Cal. 2005) (quoting *Rowland v. Christian*, 69 Cal. 2d 108, 70 Cal. Rptr. 97,

8  443 P.2d 561, 568 (Cal. 1968)).

9  79.  In California, landowners may be held liable for a failure to warn invitees

10  of hidden dangers where "(1) defendant [landowners] knew or reasonably should have

11  known of a concealed, preexisting hazardous condition on their premises; (2) plaintiff .

12  . . did not know and could not reasonably ascertain the condition; and (3) defendants

13  failed to warn plaintiff." *Gravelin v. Satterfield*, 200 Cal. App. 4th 1209, 132 Cal. Rptr.

14  3d 913, 919 (Ct. App. 2011) (citing *Kinsman*, 123 P.3d at 940).

15  80.  Pursuant to 28 U.S.C. § 2674, Defendant USA is liable to the same extent

16  as a private individual for tort claims. Additionally, Defendant USA owns the land and

17  facility at TCI. Consequently, at all times pertinent to this action, Defendant USA,

18  through its agents, officers and employees acting within the scope of their offices and

19  employment, had a non-delegable regulatory and common law duty to warn inmates in

20  its custody and control of cocci-related risks at TCI.

21  81.  Because cocci poses a hidden danger that Plaintiff could not reasonably

22  ascertain on their own, the United States had a duty to warn Plaintiff of cocci's risks

23  prior to their transfer to Taft.

24  82.  Defendant United States could not have delegated its duty to warn Plaintiff

25  for a simple reason: MTC has no power to assign prisoners or to protect any prisoners

26  housed outside of Taft. Thus, even if Defendant United States could have delegated its

27  duty to warn Plaintiff once they arrived at Taft, it was not practically possible to

28

delegate that portion of the government's duty arising prior to Plaintiffs' transfer to TCI.

83.     At all times pertinent to this action, the Defendant USA through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to adequately warn Plaintiff of the dangerous condition, to wit: the prison's location on a site regularly immersed in airborne dust containing the airborne spores of Coccidioides immitis, the nature of the infectious process caused by cocci, the heightened risk to Plaintiff of the severe form of the disease, and methods of self-help and prevention from infection of the disease that are available to inmates such as Plaintiff who are to be transferred to TCI.

84.     As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

**VI.**
**SECOND CAUSE OF ACTION**
**AGAINST DEFENDANT THE UNITED STATES OF AMERICA**

**Negligence / Jailer & Landowner**

**-Failure to Maintain Prison Facility in Safe and Habitable Condition/Failure**

**To Implement Necessary Structural Changes)-**

85.     Plaintiff hereby incorporates by reference the paragraphs asserted above, as if set forth herein in full.

86.     At all times pertinent to this action, Defendant USA, through its agents, officers and employees acting within the scope of their offices and employment, owed a legal duty to protect inmates entrusted to its care from unreasonable risk of cocci infection at TCI; a duty which included modifying existing structures or building new protective structures at TCI to reduce prisoners' exposure to the cocci-laden dust of the San Joaquin Valley.

87.     Said duty arises from Defendant USA's general duty as a landowner and jailer to protect vulnerable prisoners such as Plaintiff from foreseeable harm because

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

prisoners, unable to control the particulars of their daily lives, are "deprived of the normal opportunity to protect [themselves] from harm." *Giraldo v. Cal. Dep't of Corrs. & Rehab.*, 168 Cal. App. 4th 231, 85 Cal. Rptr. 3d 371, 386 (Ct. App. 2008).

88.     While the BOP delegated most day-to-day activities to GEO/MTC, the BOP expressly reserved to itself the right to construct new buildings, or implement modifications of or additions to existing buildings.

89.     The United States' contract with MTC states that "[n]o modifications or additions to existing buildings, mechanical or utility systems shall occur (other than routine maintenance or replacement of components) without prior approval of the [government]." Further, "[t]he government reserves the right to construct additional buildings on its property and/or expand the capacity of existing buildings. The contractor shall cooperate to the fullest extent possible should the government exercise this right."

90.     The plain language of the contract indicates that the BOP retained control over construction at TCI, which presumably would include the construction of covered walkways, or the construction of other preventative structures on the land.

91.     In retaining this power, the USA also retained the duty to construct such structures, should it become necessary to do so.

92.     Prior to and leading up to Plaintiff's incarceration at TCI, the prison experienced repeated outbreaks of cocci infections. Construction of covered walkways could have protected inmates, including Plaintiff, from exposure to the dust. Defendant breached its duty when it failed to construct and/or modify structures at TCI to reduce the risk of Valley Fever infection among inmates, including Plaintiff.

93.     Thus, at all times pertinent to this action Defendant USA, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to make the aforementioned dangerous condition of TCI reasonably safe by failing to build protective structures and covered walkways

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Case No. 1:13-cv-00967-AWI-JLT
THIRD AMENDED COMPLAINT

1  and/or modify existing structures to reduce the risk of exposure to cocci-laden dust at

2  TCI.

3      94.    As a predictable result of the foregoing negligence or wrongful acts or

4  omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the

5  injuries and damages herein described.

## VII.
### THIRD CAUSE OF ACTION
### AGAINST DEFENDANT UNITED STATES OF AMERICA

### Negligence / Jailer

### -Failure to Develop & Implement Adequate Prevention Policy-

10      95.    Plaintiff hereby incorporates by reference the paragraphs asserted above,

11  as if set forth herein in full.

12      96.    At all times pertinent to this action, Defendant USA, through its agents,

13  officers and employees acting within the scope of their offices and employment, owed a

14  legal duty to protect inmates entrusted to its care from unreasonable risk of cocci

15  infection at TCI; a duty which included developing and implementing an adequate

16  cocci prevention policy in response to the cocci outbreak at TCI.

17      97.    Said duty arises from Defendant USA's general duty as a jailer to protect

18  vulnerable prisoners such as Plaintiff from foreseeable harm because prisoners, unable

19  to control the particulars of their daily lives, are "deprived of the normal opportunity to

20  protect [themselves] from harm." *Giraldo v. Cal. Dep't of Corrs. & Rehab.*, 168 Cal.

21  App. 4th 231, 85 Cal. Rptr. 3d 371, 386 (Ct. App. 2008).

22      98.    Once it became clear that TCI was experiencing an outbreak of

23  cocci, Defendant USA began to work with the CDC to develop a policy for the

24  prevention and treatment of cocci in prisoners. This was consistent with its duty as a

25  landowner and jailer under California law. *See Giraldo* 85 Cal. Rptr. 3d at 382-86.

26      99.    Although Defendant USA delegated the general duty to oversee healthcare

27  at TCI to MTC, its actions make clear that it chose to retain the specific duty to develop

28  a policy for the prevention and treatment of cocci.

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

100.   The USA took upon itself the task of developing a policy in response to the cocci outbreak at TCI. The USA specifically directed that its contractors be excluded from development of this policy. In so doing, the USA expressed its intent to retain control over this aspect of its duty.

101.   Defendant USA's policy, however, was developed and implemented to only protect a small category of lower-risk inmates from infection. The policy Defendant developed failed to address inmates, such as Plaintiff, who were pre-disposed to developing the severe form of the disease. Moreover, the policy was implemented negligently and failed to protect those inmates, such as Plaintiff, at the highest risk of developing the severe form of the disease.

102.   Thus, at all times pertinent to this action Defendant USA, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to develop and implement an adequate cocci-protection policy at TCI.

103.   As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

### VIII.
### FOURTH CAUSE OF ACTION
### AGAINST DEFENDANT MANAGEMENT & TRAINING CORPORATION AND THE JOHN DOE DEFENDANTS

### Negligence

### -Failure to Provide Inmate with Safe and Habitable Facility-

104.   Plaintiff hereby incorporates by reference the paragraphs asserted, above, as if set forth herein in full.

105.   At all times pertinent to this action, Defendants MANAGEMENT & TRAINING CORPORATION, AND THE JOHN DOE DEFENDANTS, through their agents, officers and employees acting within the scope of their offices and employment, owed regulatory and common law duty to exercise reasonable care to provide the

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Plaintiff with a safe and habitable place of incarceration, where he could live and work without contracting a potentially fatal disease, despite his best efforts to pursue a healthy life style and avoid activities that might risk his health.

106.   At all times pertinent to this action, Defendant MANAGEMENT & TRAINING CORPORATION, AND THE JOHN DOE DEFENDANTS, through its agents, officers and employees acting within the scope of their offices and employment, negligently and recklessly failed to comply with the aforementioned duty, by instead incarcerating the Plaintiff at TCI, which it knew to be located on a site regularly immersed in dust containing the airborne spores of Coccidioides immitis, known to be the cause of the incurable and potentially deadly infectious disease Coccidioidomycosis (also known as Valley Fever or San Joaquin Valley Fever), and by failing to implement preventative measures that could have protected Plaintiff from the infection Plaintiff carries today.

107.   As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the injuries and damages herein described.

108.    Defendant's aforementioned conduct was willful and wanton and in reckless disregard of Plaintiff's health and safety, justifying the award of punitive and exemplary damages in an amount to be proven at trial.

## IX.
## FIFTH CAUSE OF ACTION
## AGAINST DEFENDANT MANAGEMENT & TRAINING CORPORATION
## AND THE JOHN DOE DEFENDANTS

### Negligence / Premises Liability

### -Failure to Operate and Maintain Prison in Safe and Habitable Condition-

109.   Plaintiff hereby incorporates by reference the paragraphs asserted above, as if set forth herein in full.

110.   At all times pertinent to this action, the Defendant MTC, through their agents, officers and employees acting within the scope of their offices and employment,

owed a regulatory and common law duty to exercise reasonable care to operate and maintain TCI in such a manner as to ensure that it was reasonably safe and habitable for human beings, and that it harbored no latent defects that constituted a dangerous condition and an unreasonable risk of harm to the health and safety of the federal inmates assigned to said prison, including Plaintiff.

111.   At all times pertinent to this action, the Defendants MANAGEMENT & TRAINING CORPORATION, AND THE JOHN DOE DEFENDANTS, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to take steps to either make the aforementioned dangerous condition of TCI safe or adequately warn Plaintiff of the dangerous condition, to wit: the prison's location on a site regularly immersed in airborne dust containing the airborne spores of Coccidioides immitis, the nature of the infectious process caused by cocci, the heightened risk to Plaintiff of the severe form of the disease, and methods of self-help and prevention from infection of the disease that are available to inmates.

112.   At all times pertinent to this action, the Defendant MTC, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully terminated watering the grass -- eliminating the only preventative measure against cocci that had been in place at TCI -- and failed to implement the remaining, widely-available preventative measures that were known to MTC and matters of common knowledge.

113.   Defendant MTC, through its agents and employees acting within the scope of their offices and employment, negligently or wrongfully failed to warn inmates such as Plaintiff of the risk of cocci infection, failed to curtail ground disturbing activities to limit the spread of cocci spores, and failed to curtail inmate activities during times when the risk of cocci infection was particularly high such as windy conditions.

114.   As a predictable result of the foregoing negligence or wrongful acts or omissions, the Plaintiff did, in fact, contract Coccidioidomycosis and has suffered the

Case No. 1:13-cv-00967-AWI-JLT

1    injuries and damages herein described.

2        115.   Defendant's aforementioned conduct was willful and wanton and in

3    reckless disregard of Plaintiff's health and safety, justifying the award of punitive and

4    exemplary damages in an amount to be proven at trial.

## X.
## DAMAGES

6        116.   As a further proximate result of the aforesaid negligent or wrongful acts or

7    omissions by one or more of the defendants, Plaintiff has been damaged, in that he has

8    incurred, and will continue to incur, medical and related expenses.

9        117.   As a further proximate result of the aforesaid negligent or wrongful acts or

10   omissions, Plaintiff has been damaged, in that, once released, Plaintiff will, from time

11   to time, be unable to work due to temporary total work disability due to illness, because

12   of his physical injury (the contracting of the disease Coccidioidomycosis).  Plaintiff

13   also faces a shortened work life expectancy, due to the continuing pain and discomfort,

14   weakness  and  fatigue  and  pulmonary  symptoms  caused  by  the  disease

15   Coccidioidomycosis, of which he will never be cured, despite the diligent pursuit of

16   appropriate medical treatment for said condition.  Premature death due to the disease is

17   likewise possible, should it disseminate and progress to meningitis.

18       118.   As a further proximate result of the aforesaid negligent or wrongful acts or

19   omissions by one or more of the defendants, Plaintiff has been damaged, in that he has

20   incurred, and will continue to incur, medical and related expenses.

21       119.   As a further proximate result of the aforesaid negligent or wrongful acts or

22   omissions, Plaintiff has been damaged, in that, once released, Plaintiff will, from time

23   to time, be unable to work due to temporary total work disability due to illness, because

24   of his physical injury (the contracting of the disease Coccidioidomycosis).  Plaintiff

25   also faces a shortened work life expectancy, due to the continuing pain and discomfort,

26   weakness  and  fatigue  and  pulmonary  symptoms  caused  by  the  disease

27   Coccidioidomycosis, of which he will never be cured, despite the diligent pursuit of

28

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

1  appropriate medical treatment for said condition.  Premature death due to the disease is

2  likewise possible, should it disseminate and progress to meningitis.

3  **PRAYER FOR RELIEF**

4  WHEREFORE, Plaintiff prays judgment against the Defendant UNITED

5  STATES OF AMERICA, as follows:

6  1.   For general damages according to proof;

7  2.   For medical and related expenses, according to proof;

8  3.   For lost earnings, past and future;

9  4.   For total money damages in the amount of $2,500,000.00;

10  5.   For costs of suit incurred herein;

11  6.   For interest, as allowed by law; and

12  7.   For such other and further relief as the Court may deem proper.

13  WHEREFORE, Plaintiff prays judgment against the Defendant

14  MANAGEMENT & TRAINING CORPORATION, AND THE JOHN DOE

15  DEFENDANTS, as follows:

16  8.   For general damages according to proof;

17  9.   For medical and related expenses, according to proof;

18  10.  For lost earnings, past and future;

19  11.  For total money damages in the amount of $2,500,000.00;

20  12.  For Punitive Damages in an amount to be determined at trial;

21  13.  For costs of suit incurred herein;

22  14.  For interest, as allowed by law;

23  15.  For such other and further relief as the Court may deem proper.

24  ///

25  ///

26  ///

27

28

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Case No. 1:13-cv-00967-AWI-JLT
THIRD AMENDED COMPLAINT

1   DATED:  December , 2016         BOUCHER LLP

2

3

4                                   By:      /s/ Brian M. Bush
                                            RAYMOND P. BOUCHER
5                                           HERMEZ MORENO
                                            MILIN CHUN
6                                           BRIAN M. BUSH

7

8   FELDMAN & WALLACH

9

10

11                                  By:      /s/ Ian Wallach
                                            IAN WALLACH
12                                          JASON K. FELDMAN

13
                                            Attorneys for Plaintiff RICHARD
14                                          NUWINTORE

15

16

17

18

19

20

21

22

23

24

25

26

27

28

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903

Case No. 1:13-cv-00967-AWI-JLT
THIRD AMENDED COMPLAINT

1

2                          **JURY TRIAL DEMAND**

3            As to claims against Defendant Management & Training Corporation, and the

4    John Doe Defendants: Plaintiff herein demands a trial by jury**.**

5

6    DATED:  December , 2016           BOUCHER LLP

7

8

9                                 By:      /s/ Brian M. Bush
                                           _____
10                                         RAYMOND P. BOUCHER
                                           HERMEZ MORENO
11                                         MILIN CHUN
                                           BRIAN M. BUSH
12

13                                 FELDMAN & WALLACH

14

15

16                                 By:      /s/ Ian Wallach
                                           _____
17                                         IAN WALLACH
                                           JASON K. FELDMAN
18

19                                         Attorneys for Plaintiff RICHARD
                                           NUWINTORE
20

21

22

23

24

25

26

27

28

Case No. 1:13-cv-00967-AWI-JLT
THIRD AMENDED COMPLAINT

BOUCHER LLP
21600 Oxnard Street, Suite 600
Woodland Hills, California 91367-4903