# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD NUWINTORE,<br><br>　　　　　Plaintiff<br><br>　　　　　v.<br><br>MANAGEMENT & TRAINING CORPORATION, UNITED STATES OF AMERICA, AND JOHN DOES 1-9,<br><br>　　　　　Defendants | CASE NO. 1:13-CV-967 AWI-JLT<br><br>ORDER ON DEFENDANTS'<br>MOTION FOR SUMMARY JUDGMENT<br><br>(Doc. No. 135) |

Plaintiff Richard Nuwintore has alleged claims of negligence and premises liability against Defendant MTC.[1] While housed at Taft Correctional Institution ("TCI"), Nuwintore contracted Valley Fever, a disease caused by an airborne spore commonly known as *Cocci*. Nuwintore contends that MTC, who manages TCI's day-to-day operations, negligently failed to operate and maintain the prison, and failed to ensure it was safe and habitable, causing his infection.

At the close of discovery, MTC filed for summary judgment, contending: (I) Nuwintore cannot establish a causal link between his infection and MTC's alleged failure to implement dust-mitigation measures; and (II) Nuwintore has not presented clear and convincing evidence to support his punitive damages claim.

For the reasons that follow, the Court will: (I) grant in part and deny in part MTC's summary judgment motion on the proximate-cause issue, and (II) grant summary judgment in favor of MTC on the issue of punitive damages.

---

[1] At the time of the Order, Nuwintore and Defendant U.S.A. were moving towards settlement of all claims. See Doc. No. 142.

*Background*[2]

Valley Fever is caused when naturally occurring spores of the soil fungi *Coccidioides immitis* and *Coccidioides posadasii* ("*Cocci*") are inhaled by susceptible individuals. Doc. No. 135-1, at ¶ 1 (Joint Stmt. of Facts). *Cocci* grows in sandy, alkaline soils in locations with low rainfall, and a single spore of the fungi can cause Valley Fever. Id. at ¶ 2; Doc. No. 139-2 at ¶ 39. However, most people who are exposed to *Cocci* do not become notably ill.[3] Doc. No. 135-1, at ¶ 5. In the United States, approximately 75% of *Cocci* cases occur from exposures in Arizona, 25% in California. Id. at ¶ 3. In California, the southern San Joaquin Valley has the highest rate of Valley Fever infections (the "Hyper-Endemic Area"). Id. at ¶ 4; Doc. No. 139-3 at ¶ 4 (Decl. Johnson). TCI is located in the Hyper-Endemic Area—in Kern County, California—and the facility's day-to-day operations have been managed by MTC since 2007. Doc. No 135-1, at ¶ 6, 8.

In 2004, an outbreak of Valley Fever hit the prisoners housed at TCI. Doc. No 139-1, at ¶ 23. In the summer of 2010, TCI experienced another surge in infections that persisted for the next two years. See Doc. No. 140-4, pp. 29-64 (Ex. 10, TCI Infectious Disease Reports 2010-2012). In the fall of 2010, at three separate MTC staff meetings, MTC staff speculated as to whether this surge was due to the lack of watering the grounds, or merely coincided with an increase in Valley Fever infections in Kern County. See Doc. No. 140-5 (Ex's. 11-13, MTC Meeting Minutes for Oct., Nov. and Dec. 2010). TCI is surrounded by large oil-development tracks with unpaved roads and work yards, a kitty litter plant, and cultivated agricultural lands. Doc. No. 135-1, at ¶ 10. MTC staff concluded the best course of action to combat the outbreak

---

[2] The facts are presented in the light most favorable to the nonmoving party—Nuwintore. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).

[3] For further background on Valley Fever, see Nuwintore v. U.S., 822 F.3d 510, 514-515 (9th Cir. 2016):
> "Symptomatic [*Cocci*], which occurs in approximately 40% of all infections, has a wide clinical spectrum, including mild influenza-like illness, severe pneumonia, and disseminated disease." The disseminated form of the disease—that is, when the fungus spreads from the lungs to the body's other organs—is the most serious. Disseminated *Cocci* may cause miliary tuberculosis, bone and joint infections (including osteomyelitis), skin disease, soft tissue abscesses, and meningitis. In some cases, surgery may be the only available treatment. The antifungal Fluconazole is effective against most *Cocci* infections, but it is a daily treatment that must be continued for the rest of the patient's life. Individuals of certain races, especially African–Americans and Filipinos, are at significantly higher risk of contracting disseminated *Cocci* than the rest of the population. If left untreated and allowed to progress to meningitis, the disseminated form of the disease is uniformly fatal.

was to continue transferring medically-eligible prisoners out of TCI, continue to recommend prisoners wear face masks while working outside, and continue emphasizing to supervisory staff that prisoners wear "personal protective equipment." See Doc. No. 140-5, at Ex. 13.

Upon Nuwintore's conviction and sentence, he was imprisoned at TCI in August of 2011, and was medically screened when he arrived. Doc No. 135-1, at ¶¶ 23-24. Based on the then-current policy of protecting prisoners with compromised immune systems only (as recommended by the Bureau of Prisons and set forth in MTC's Standard Operating Procedures Manual), MTC accepted Nuwintore at TCI, as he did not register as a member of a susceptible population. Id. at ¶ 25-26. In September of 2011, one month after arriving at TCI, Nuwintore was diagnosed with Valley Fever. Doc. No. 135-1 at ¶ 27. Nuwintore states that he never saw signs or pamphlets about the dangers of Valley Fever by MTC's staff prior to becoming infected, and never saw anyone wear a mask at TCI. Doc. No. 140-2, at 31:17-22; 36:7-8. Nuwintore's Valley Fever resolved in 2014 after he received treatment at TCI, but a chronic form of the disease has been known to develop up to twenty-years after the initial infection. Doc. No. 139-2, at ¶ 38, 135-3, at p. 165 (Ex. J, MTC Standard Operating Procedure 4002, re: *Cocci*).

### *Legal Standard for Summary Judgment*

Summary judgment is proper when no genuine issue as to any material fact exists, entitling the moving party to judgment as a matter of law. Rule 56.[4] A dispute is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. Freecycle Sunnyvale v. Freecycle Network, 626 F.3d 509, 514 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). A fact is "material" if it might affect the outcome of the suit under the governing law. United States v. Kapp, 564 F.3d 1103, 1114 (9th Cir. 2009).

The party seeking summary judgment bears the initial burden of informing the court of the legal basis for its motion and of identifying the portions of the declarations, pleadings, and discovery that demonstrate an absence of a genuine issue of material fact. Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)). Where the moving party will bear the burden of proof on an issue at trial, the movant

---

[4] Citations to the "Rules" is to the Federal Rules of Civil Procedure, unless otherwise noted.

must affirmatively demonstrate that no reasonable trier of fact could find other than for the movant. Id. Where the moving party will not bear the burden of proof on an issue at trial, the movant may prevail by "merely by pointing out that there is an absence of evidence to support the nonmoving party's case." Id. If a moving party fails to carry its burden of production, then "the non-moving party has no obligation to produce anything, even if the non-moving party would have the ultimate burden of persuasion." Nissan Fire & Marine Ins. Co. v. Fritz Cos., 210 F.3d 1099, 1102-03 (9th Cir. 2000) (citing Adickes v. S.H. Kress & Co., 398 U.S. 144, 160 (1970)).

If the moving party meets its initial burden, the opposing party must then establish that a genuine issue as to any material fact exists. Id. at 1103. The opposing party cannot rest upon the mere allegations or denials of its pleading, but must instead produce evidence that sets forth specific facts showing a genuine issue for trial still exists. Estate of Tucker v. Interscope Records, 515 F.3d 1019, 1030 (9th Cir. 2008) (quoting Anderson, 477 U.S. at 248). The opposing party's evidence is to be believed, and all justifiable inferences that may be drawn from the facts placed before the court must be drawn in the opposing-party's favor. Anderson, 477 U.S. at 255; Narayan v. EGL, Inc., 616 F.3d 895, 899 (9th Cir. 2010). While a "justifiable inference" need not be the most likely or the most persuasive inference, it must still be rational or reasonable. Id. The parties have the obligation to identify material facts; the court is not required to scour the record in search of a genuine disputed material fact. Simmons v. Navajo Cnty., 609 F.3d 1011, 1017 (9th Cir. 2010). A party's "conclusory statement that there is a genuine issue of material fact, without evidentiary support, is insufficient to withstand summary judgment." Bryant v. Adventist Health Sys./W., 289 F.3d 1162, 1167 (9th Cir. 2002). Further, a "motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'" Anderson, 477 U.S. at 249-50; Addisu v. Fred Meyer, Inc., 198 F.3d 1130, 1134 (9th Cir. 2000).

Fundamentally, summary judgment may not be granted "where divergent ultimate inferences may reasonably be drawn from the undisputed facts." Fresno Motors, LLC v. Mercedes Benz USA, LLC, 771 F.3d 1119, 1125 (9th Cir. 2015).

/ / /

/ / /

## I. MTC's proximate-cause challenge is partially, but not fully, meritorious

Nuwintore has raised two claims against MTC—negligence and premises liability—connected to his contracting of Valley Fever while housed at TCI. Under California law, the elements of negligence are: "(1) defendant's obligation to conform to a certain standard of conduct for the protection of others against unreasonable risks (duty); (2) failure to conform to that standard (breach of the duty); (3) a reasonably close connection between the defendant's conduct and resulting injuries (proximate cause); and (4) actual loss (damages)." Corales v. Bennett, 567 F.3d 554, 572 (9th Cir. 2009) (quoting McGarry v. Sax, 158 Cal.App.4th 983, 994 (2008)). The elements of a premises-liability claim are the same: "a legal duty of care, breach of that duty, and proximate cause resulting in injury." Lemberg v. JPMorgan Chase Bank, N.A., 2018 WL 1046886, at *2 (N.D. Cal. Feb. 26, 2018) (quoting Kesner v. Superior Court, 1 Cal.5th 1132, 1158 (2016)); see also May v. Northrop Grumman Sys. Corp., 680 F. App'x 556, 559 (9th Cir. 2017).

MTC has moved for summary judgment, contending that even if it had breached a duty to Nuwintore, he has not demonstrated these failures are reasonably connected to his illness. To demonstrate proximate cause in California, a defendant's act or omission must have been a substantial factor in bringing about the injury. Padilla v. Rodas, 160 Cal.App.4th 742, 752 (2008). Ordinarily, the causation element is a question of fact for the jury's determination. McGarry, 158 Cal.App.4th at 994. Further, it is well settled that causation in a personal-injury action "must be proven within a reasonable medical probability based upon competent expert testimony[;] [m]ere possibility alone is insufficient to establish a prima facie case." Miranda v. Bomel Const. Co., Inc., 187 Cal.App.4th 1326, 1336 (2010). As the Miranda Court elaborated:

> There can be many possible 'causes,' indeed, an infinite number of circumstances which can produce an injury or disease. A possible cause only becomes 'probable' when, in the absence of other reasonable causal explanations, it becomes more likely than not that the injury was a result of its action. This is the outer limit of inference upon which an issue may be submitted to the jury.

Id. (citing Jones v. Ortho Pharmaceutical Corp., 163 Cal.App.3d 396, 402–403 (1985).

Nuwintore alleges two theories of liability, each under his two causes of action; the Court must examine the element of proximate cause for each theory.

> A. *(1) No genuine issues of material fact exist on Nuwintore's "ground disruption" theory, but (2) genuine issues do exist on his "airborne-dust protection" theory*

<u>*Parties' Arguments*</u>

Nuwintore's theory of liability asserts that MTC failed to make TCI safe in two ways:

(1) by deciding to cease watering the grass and to continue with digging and other ground-disruption activities, thereby increasing the amount of dust in the air at TCI;

(2) by not instituting airborne-dust protective measures, including curtailing inmates' activities during windy conditions, installing HEPA air filters in TCI, covering external walkways, and providing breathing masks to inmates.

MTC asserts Nuwintore's "failure-to-mitigate" theories fail because he lacks evidentiary support—either through documentary evidence, his own testimony, or from his experts—demonstrating a causal link between his injury and MTC's acts and omissions. MTC argues:

(1) Nuwintore has no evidence demonstrating the soil at TCI contained the *Cocci* spore, and argues it could have originated from soil outside of TCI. Therefore, Nuwintore's theory—that his injury arose from MTC's choice to stop watering the grounds and its choice to dig in the yard—fails because it is speculative at best;

(2) Nuwintore must demonstrate more than a mere possibility that dust mitigation measures—curtailing inmates' activities during windy conditions, installing HEPA air filters, covering external walkways, and providing breathing masks—would have reduced his likelihood of contracting the disease. MTC claims Nuwintore's experts lack sufficient facts or data to make these causal connection, and cannot merely state that mitigation efforts would result in a higher-percentage chance of remaining uninfected.

MTC concludes that, absent admissible expert testimony, the jury would be required to impermissibly speculate as to the efficacy of any proposed mitigation efforts.

Nuwintore counters that sufficient evidence exists demonstrating the requisite causal connection. He argues:

(1) MTC's choices to dig around the building, tear up the grass, and cease watering the soil coincides with a period where *Cocci* infections spiked, between 2010 and 2012—the

| | |
|---|---|
| 1 | same period when Nuwintore was infected; and MTC had concerns as to the rising |
| 2 | rates of infection, knowing TCI sits in the Hyper-Endemic Area; |

(2) Given the airborne nature of the disease, and given his expert's testimony that many of the airborne-mitigation techniques could have prevented him from inhaling the spore, it is for the jury to determine causation. Nuwintore maintains the expert testimony he intends to offer will not speak to "specific percentages" of the likelihood of mitigation, as MTC claims, but will merely aid the jury in determining the existence of a causal connection to MTC's failure to institute airborne-mitigation procedures.

Nuwintore thus concludes that genuine issues exist, foreclosing summary judgment.

### *Analysis*

The California Court of Appeal, 4th District, dealt with a substantially-similar issue in Miranda v. Bomel Const. Co., Inc., 187 Cal.App.4th 1326 (2010). That court's holding instructs that summary judgment should be granted on Nuwintore's "ground-disruption" theory, but does not otherwise control his "airborne-dust prevention" theory. Understanding this rationale requires a deep-dive into Miranda and similar California cases on proximate cause.

In Miranda, defendant Bomel, a construction company, excavated approximately 1,600 cubic yards of dirt from an area in Southern California, and deposited it in a vacant lot 10-15 feet from Miranda's locksmith shop. Id. at 1328. Three months later, Miranda began exhibiting symptoms of Valley Fever. Id. at 1329. After Miranda died, his wife brought an action for negligence, alleging Bomel failed to water, cover, or otherwise control for dust in the dirt pile, and this breach of their duty caused her husband's death. Id. The plaintiff had no evidence to indicate the dirt pile actually contained the *Cocci* spore. Id. Instead, she intended to submit the testimony of two medical-doctor experts, each of whom relied on probabilities to conclude there was a reasonable medical probability that Miranda contracted Valley Fever from a spore originating from the dirt pile. Id. at 1331-32. Upon Bomel's objections, the trial court excluded these experts' testimony, reasoning that the foundation for each experts' opinion was lacking, thereby rendering their ultimate conclusions speculative at best. Id. at 1334. Thus, since plaintiff presented no direct evidence demonstrating proximate cause, since the conclusions from plaintiff's

experts as to probable cause were excluded, and since Bomel's contrary expert testimony—that the *Cocci* spore can be transported great distances by strong winds—further broke the causal link, summary judgment for the defendant construction company was warranted. Id.

On appeal, the 4th District affirmed—specifically on the issue of causation. Id. at 1336. The Court first reasoned that Bomel had met its burden to show that it was merely "a *possibility*, not a reasonable medical probability, Mr. Miranda contracted Valley Fever by inhaling an airborne *Cocci* spore that originated from the [dirt pile]." Id. (emphasis in original). The Court agreed that the easiest way for the plaintiff to demonstrate the connection would have been to present soil tests or other scientific data "confirming the existence of the *Cocci* fungus in the soil at issue at the time of exposure." Id. In the absence of such data, the Court confirmed that expert testimony *could* be offered to demonstrate proximate cause, under Ortho Pharmaceutical, 163 Cal.App.3d at 402–403, but it was the plaintiff's burden "to create a triable issue of fact on the issue of causation." Id. at 1337. The plaintiff had not successfully done so, due mainly to the speculative nature of her expert's conclusions. Id. For example, the logic of one of the medical doctors was as follows:

- The *Cocci* fungus grows in the soil, and is endemic to Southern California.
- Valley Fever is caused by the *Cocci* fungus, which infects humans by entering the lungs.
- Therefore, exposure to dust from soil is a critical factor in determining the risk for infection.
- Manmade activities, such as the stockpiling of uncovered dirt which creates dust that is released into the air . . . will significantly increase the risk of acquiring the disease.
- [Therefore], it is my opinion, to a reasonable degree of medical probability, that . . . Miranda's exposure to the dust from the stockpile of dirt . . . was a substantial factor in causing his Valley Fever.

Despite the experts' use of the magic phrase "reasonable degree of medical probability," the 4th District reasoned this represented a logical fallacy—"post hoc, ergo propter hoc (after the fact, therefore because of the fact)." Id. at 1339. This rendered the expert's opinion speculative, which did not by itself create a genuine issue of material fact. Id. Instead, the Court likened the plaintiff's case to "naturally occurring diseases such as Lyme disease or spider bites." Id. at 1340 (citing Butcher v. Gay, 29 Cal.App.4th 388, 404 (1994) (summary judgment granted in action against homeowner who permitted his dog carrying a Lyme-disease-carrying tick to sit on

8

plaintiff's lap); Brunelle v. Signore, 215 Cal.App.3d 122, 129 (1984) (summary judgment granted in favor of vacation-home owner against guest who suffered serious injuries after being bitten by a brown recluse spider)). Simply, Miranda could have inhaled the *Cocci* spore anywhere in Southern California, and without more to definitively connect his infection to the nearby dirt pile, the construction company could not be held legally liable. Id.; cf. Crim v. International Harvester Co., 646 F.2d 161 (5th Cir. 1981) (upholding jury verdict for plaintiff in Valley Fever negligence case where plaintiff presented the following circumstantial evidence: an expert testified as to the overwhelming prevalence of the *Cocci* spore in the area, and also presented soil samples from the grounds surrounding the defendant's premises that tested positive for the spore).

In doing so, the Miranda Court distinguished another seminal California case on proximate cause: Sarti v. Salt Creek Ltd. 167 Cal.App.4th 1187 (2008). Therein, the court opined on the connection between a plaintiff's foodborne illness and a restaurant's sterilization procedures, allowing the jury to draw reasonable inferences from the plaintiff's "strong circumstantial evidence" that she contracted her illness from eating raw tuna at the defendant's establishment. Id. at 1207. The plaintiff's evidence demonstrated the restaurant had particularly unsanitary conditions, including multiple health-code violations showing the restaurant allowed raw chicken to come into contact with other food, this kind of cross-contamination could result in the spread of the offending bacteria, and the probability that a customer would become ill based on the cross-contamination was high. Id. Critically, the defendant restaurant offered no evidence of substance to indicate the plaintiff could have contracted the illness elsewhere (whereas the defendant in Miranda offered competing expert testimony on how *Cocci* circulates). Id. at 1211.

Applying these cases to Nuwintore's facts, the Court finds Miranda controls Nuwintore's "ground disruption" theory, but finds Miranda inapposite to his "airborne-dust protection" theory, which is more logically controlled by Sarti.

*(1) Ground-disruption theory*

In some ways, Miranda is distinguishable from Nuwintore's case. Most prominently, Miranda did not spend 24-7 in his locksmith shop, dramatically increasing the number of places he could have inhaled the offending *Cocci* spore. Nuwintore, of course, was confined to the TCI

9

campus in 2011, and as a prisoner, his movements were often controlled by MTC. Thus, there is no question *where* Nuwintore was when he became ill. Further, MTC is not only located in an area that is known to contain the spore, but in fact sits in the Hyper-Endemic Area, where the spore is most prevalent.

However, the differences between these cases appears to end there, leaving their similarities too overwhelming to set aside on Nuwintore's "ground-disruption" theory. Nuwintore has no soil samples or other scientific data indicating the *Cocci* spore originated from the TCI grounds. Miranda, 187 Cal.App.4th at 1336. Additionally, Nuwintore's proffered expert-testimony follows a similar logic to those experts in Miranda: that *Cocci* is endemic to the Valley, can become airborne by digging and not watering dirt, and enters the lungs via dust particles. Thus, under Miranda, the Court should consider the conclusions of Nuwintore's expert, Dr. Johnson, as speculative—failing to create a genuine issue of material fact on the "ground-disruption" theory. 187 Cal.App.4th at 1342-43. Further, unlike Sarti, MTC has offered evidence through its own expert—as well as via Nuwintore's own experts—that the particularly-mobile quality of the spore makes it extremely difficult to determine the patch of ground that birthed the spore. 167 Cal.App.4th at 1211. Accordingly, Miranda controls here, necessitating summary judgment in favor of MTC on the "ground-disruption" theory for both the negligence and premises-liability claims. Miranda, 187 Cal.App.4th at 1339.

*(2)   Airborne-dust prevention theory*

Where Miranda controls on Nuwintore's first mitigation theory, careful application of the case's holding cuts in the opposite way on Nuwintore's second theory—that MTC had a duty to protect the prisoners from dust in the air at TCI, and this failure caused Nuwintore to inhale the *Cocci* spore and contract Valley Fever. Under this theory, it is immaterial whether the offending dust-particle originated from in- or outside TCI, because the experts on both sides agree the spore enters the lungs via contaminated dust in the air. Doc. No. 135-1, at ¶ 1. Unlike Miranda, it is undisputed where Nuwintore was when he inhaled the spore, because he had been housed at TCI in 2011, did not test positive for Valley Fever beforehand, and remained incarcerated there until he became infected a month later. See Doc No. 128-3, at p. 70:16-18; Doc. No 135-1 at ¶ 23-26.

The Miranda court did not have to decide the issue of whether Miranda's locksmith shop should have done more to protect its employee by, for example, curtailing his need to work outdoor during windy conditions, installing HEPA air filters in the shop, covering external walkways, and providing him with a breathing mask. But this is exactly the claim Nuwintore presents in his third theory—that MTC should have done more to cut down on the amount of dust that prisoners at TCI inhaled through these kinds of methods. Nuwintore presents evidence of an outbreak of Valley Fever between 2010-2012, and critically, MTC has offered no evidence of substance to indicate Nuwintore could have inhaled the spore from any source aside from airborne dust. Sarti, 167 Cal.App.4th at 1211. Nuwintore's experts opine that more dust-mitigation methods could have reduced the potential for infection in the campus, and Nuwintore says he never saw signs or pamphlets about the dangers of Valley Fever by MTC's staff prior to becoming infected, and never saw anyone wear a mask at TCI. Doc. No. 140-2, at 31:17-22; 36:7-8. Conversely, MTC maintains it was following standard procedures based on previous studies and instructions from the Bureau of Prisons, and its staff meeting minutes indicate the company did in fact have a policy in place to protect the prisoner's lungs. See Doc. No. 140-5. These causation issues are more logically controlled by Sarti than Miranda, as they turn on credibility issues that should be left for the jury. Freecycle, 626 F.3d at 514; see also Ortega v. Kmart Corp. 26 Cal.4th 1200, 1205 (2001) ("Plaintiff's burden is to introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. Where the experts' conclusions were expressed at the very least as being more probable than not, their evidence is not speculative or conjectural, and based on their evidence, the probabilities are not at best evenly balanced.") (citations omitted); Nola M. v. University of Southern California,16 Cal.App.4th 421, 436–37 (1993) ("We think it comes down to this: When an injury can be prevented by a lock or a fence or a chain across a driveway or some other physical device, a landowner's failure to erect an appropriate barrier can be the legal cause of an injury inflicted by the negligent or criminal act of a third person").

/ / /

/ / /

*Conclusion to Section I*

MTC's motion for summary judgment is granted on the "failure to mitigate by controlling the grounds at MTC" theory. However, Nuwintore's "airborne dust prevention" theory—that MTC's failure to control Nuwintore's exposure to dust particles in the air was a substantial factor in his contracting of Valley Fever—is supported by relevant evidence; thus, Nuwintore may proceed to trial on this theory under both his negligence and premises-liability claims. See, e.g., Marr v. Bank of America Nat. Ass'n 2011 WL 2912878 at *2 (N.D. Cal. July 20, 2011) ("Of the three aforementioned claims, each included multiple theories for why plaintiff should recover. In the order on the summary judgment motions, many of the theories were resolved, but none of the claims was fully resolved.").

## II. Plaintiff lacks "clear and convincing" evidence of malice from MTC's managing agents, foreclosing punitive damages

*Parties' Arguments*

Nuwintore has prayed for an award of punitive damages under both the negligence and premises-liability claims, averring MTC's failure to protect him from airborne dust particles was willful and wanton and in reckless disregard of his health and safety.

MTC maintains Nuwintore lacks clear and convincing evidence that would allow for a claim of punitive damages to reach a jury. MTC states that under California law, the evidence must demonstrate an officer, director, or managing agent of the corporation committed the act of oppression, fraud, or malice. MTC then contends Nuwintore's evidence fails to show MTC's managing agents engaged in or approved of a wrongful act, consciously disregarded Nuwintore's safety, or were otherwise guilty of an act "comparable to the commission of a crime." Therefore, MTC argues summary judgment on the issue of punitive damages is warranted.

Nuwintore contends MTC knew of the hidden danger of Valley Fever and knew what mitigation measures could decrease the risks, but chose not to act anyway. Nuwintore states that under California law, malice only requires this knowledge be paired with a conscious disregard for the consequences of failing to act, and he maintains the evidence shows just that. Nuwintore points to MTC's purported financial motivations for not instituting airborne-dust-mitigation

procedures, and avers that a jury can properly infer "conscious disregard" from the managing-agents' actions.

MTC replies that it did act to mitigate dust, pursuant to recommendations from the CDC and the Bureau of Prisons, but merely did not institute *all* the methods Nuwintore argues for. MTC contends no evidence exists to show its managing agents engaged in or approved a wrongful act, and Nuwintore's "evidence" of improper financial motivation is purely speculative.

*Analysis*

The availability of punitive damages is a question of state law. Central Office Tel. v. AT&T Co., 108 F.3d 981, 993 (9th Cir. 1997), rev'd on other grounds, 524 U.S. 214, 228, 118 (1998). To obtain punitive damages under California law, Nuwintore must establish "by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294(a); see also In re Angelia P., 28 Cal.3d 908, 919 (1981) ("'Clear and convincing' evidence requires a finding of high probability . . . that the evidence be so clear as to leave no substantial doubt; sufficiently strong to command the unhesitating assent of every reasonable mind."). "[A]lthough the clear and convincing evidentiary standard is a stringent one, it does not impose on a plaintiff the obligation to prove a case for punitive damages at summary judgment." Am. Airlines, Inc. v. Sheppard, Mullin, Richter & Hampton, 96 Cal.App.4th 1017, 1049 (2002) However, "the higher standard of proof must be taken into account in ruling on a motion for summary judgment[,] since if a plaintiff is to prevail on a claim for punitive damages, it will be necessary that the evidence presented meet the higher evidentiary standard." Id.; Hoch v. Allied-Signal, Inc., 24 Cal.App.4th 48, 60–61 (1994).

Nuwintore asserts MTC's conduct was malicious, in that MTC engaged in "despicable conduct . . . with a willful and conscious disregard of [his] safety." Cal. Civ. Code §3294(c)(1). "Conscious disregard" exists where "the defendant was aware of the *probable* dangerous consequences of [its] conduct, and [it] willfully and deliberately failed to avoid those consequences." Hilliard v. A.H. Robins Co., 148 Cal.App.3d 374, 395 (1983); see also Willis v. Buffalo Pumps Inc., 34 F.Supp.3d 1117, 1133 (S.D. Cal. 2014). "Whether [a] corporation will be liable for punitive damages depends, not on the nature of the consequences, but rather on whether

13

the malicious employee belongs to the leadership group of officers, directors, and managing agents." Cruz v. Home Base, 83 Cal.App.4th 160, 168 (2000). Thus, Nuwintore must show the alleged malice occurred at a high level in MTC. As wisely summarized in Willis:

> While this evidentiary burden is high, it is not insurmountable. Plaintiff need not produce a smoking memorandum signed by the CEO and Board of Directors. Rather, California law permits a plaintiff to satisfy the "managing agent" requirement through evidence showing the information in the possession of the corporation and the structure of management decision-making that permits an inference that the information in fact moved upward to a point where corporate policy was formulated. These inferences cannot be based merely on speculation, but they may be established by circumstantial evidence, in accordance with ordinary standards of proof.

34 F. Supp. 3d at 1133 (quoting Romo v. Ford Motor Co., 99 Cal.App.4th 1115, 1141 (2002)).

Nuwintore has no "smoking memorandum" from any MTC officer, director or managing agent manifesting a conscious disregard for the safety of the prisoners at TCI. Instead, Nuwintore presents circumstantial evidence that he maintains supports his claim that MTC acted maliciously in refusing to institute further airborne-dust-mitigation procedures.[5]

First, Nuwintore presents numerous facts demonstrating MTC has long been aware of the dangers of Valley Fever. This includes the monthly "Infectious Disease Reports" generated by MTC, showing the outbreak between 2010 and 2012 (see Doc. No. 140-4, pp. 29-64), MTC's "Performance Meeting Minutes" from late 2010, showing MTC agents' knowledge of the outbreak (see Doc. No. 140-5), and various *Cocci*-warning pamphlets MTC provided for inmates (Doc. No. 135-3, pp. 171-178, Ex. K). MTC does not dispute its awareness of the dangers of the spore.

Second, Nuwintore argues the same evidence demonstrates MTC's officers were aware of particular dust-mitigation efforts it could have undertaken. For example, at the three Performance Meetings, MTC agents discussed whether its actions could be contributing to the outbreak. See Doc. No. 140-5 at pp. 6-7, 21-22, 31-32. The meeting minutes demonstrate that the agents were grappling with how to implement a water-conservation program, per the Bureau of Prisons, while

---

[5] In his opposition brief, Nuwintore points to additional evidence beyond what the Court discusses herein. See Doc. No. 132. However, since these additional pieces of evidence appear tied to theories that have been foreclosed in this Order (see Section I, supra), the Court will focus on evidence relevant to his remaining theory.

also dealing with its potential exacerbation of the Valley Fever outbreak.  See Id.  At the December meeting, MTC's agents concluded the increase in Valley Fever cases inside TCI coincided with an increase in cases in Kern County, and "may not be due to lack of watering." Id. at p. 31.  MTC's agents stated, "TCI will continue to recommend inmates wear face masks while working outside" and stress the importance that supervisory staff "ensure they are wearing proper personal protective equipment." Id.  Conversely, Nuwintore stated in his deposition that he never saw signs or pamphlets about the dangers of Valley Fever by MTC's staff prior to becoming infected, and never saw anyone wear a mask at TCI.  Doc. No. 140-2, at 31:17-22; 36:7-8.  Viewed in a light most favorable to Nuwintore, MTC failed to follow through on its training, education, and implementation procedures regarding breathing masks; resolution of these questions would be best left to a jury.  Fresno Motors, 771 F.3d at 1125.

However, to be able to present the punitive-damages issue to the jury, not only must Nuwintore allude to MTC's negligence in failing to protect the inmates from potentially-dangerous airborne dust, but must present evidence "leaving no substantial doubt" that the agents "maliciously" failed to provide masks to the inmates and train the staff in protective gear.  Am. Airlines, 96 Cal.App.4th at 1049; In re Angelia P., 28 Cal. 3d 908, 919.  Nuwintore has no such evidence, and the record appears to indicate exactly the opposite—that MTC's agents believed it *had* instituted these techniques.  See Doc. No. 140-5 at p. 31 (where MTC's managing agents at the December Performance Meeting conclude the best way to combat the Valley Fever outbreak was to "*continue*" to recommend breathing masks and other protective gear).  Further, Nuwintore has no evidence demonstrating MTC agents consciously disregarded the installation of HEPA air filters, covered walkways, or any other of his proposed mitigation techniques, for there is no mention of these potential remedies.  See Id.  A jury may well determine this was negligent behavior, but based on the evidence in the record, no reasonable jury could conclude these choices were done with malice.  Am. Airlines, 96 Cal.App.4th at 1049; cf. Stewart v. Truck Ins. Exch., 17 Cal.App.4th 468, 483 (1993) ("While we have no trouble concluding that the evidence in this case was sufficient to support the jury's finding of bad faith, it does not follow that it also established a basis for punitive damages . . . While [the] investigation could possibly have been pursued with

more vigor, it was nonetheless pursued, not ignored."); with Willis, 34 F. Supp. 3d at 1133–34 (finding summary judgment on punitive damages inappropriate where the plaintiff presented evidence that the defendant's managing agents had known about the dangers of asbestos for over forty years, but continued to sell materials known to contain the offending fibers without instituting any mitigation procedures).

The only other "evidence" Nuwintore points to in support of his "maliciousness" argument is his contention that MTC, as a for-profit company, succumbed to financial motivations, casting aside its duty to protect its susceptible inmate population. Nuwintore presents this purely as argument, however, and so this speculative contention cannot defeat MTC's summary judgment motion. Anderson, 477 U.S. at 249-50 ("A motion for summary judgment may not be defeated . . . by evidence that is 'merely colorable' or 'is not significantly probative.'").

Without "clear and convincing" evidence demonstrating malice on the part of MTC, the Court cannot say that reasonable jurors could conclude punitive damages are warranted. Thus, summary judgment on the prayer for punitive damages, for both the negligence and premises-liability claims, is warranted. Hoch v. Allied-Signal, Inc., 24 Cal.App.4th 48, 60–61 (1994); see also Basich v. Allstate Ins. Co., 87 Cal.App.4th 1112, 1121 (2001) ("On a motion for summary adjudication with respect to a punitive damages claim, the higher evidentiary standard applies. [T]he plaintiff can only prevail by establishing malice, oppression or fraud by clear and convincing evidence.").

## **ORDER**

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's summary judgment motion (Doc. No. 135) is GRANTED IN PART AND DENIED IN PART, as follows:
    a. Plaintiff may proceed to trial on his negligence and premises-liability claims under his "airborne dust mitigation" theory;
    b. Defendant is granted summary judgment on Plaintiff's "ground disruption" theory;
    c. Defendant is also granted summary judgment on Plaintiff's punitive-damages prayer, for both the negligence claim and the premises liability claim; and

2. The remainder of this case is referred back to the magistrate judge for further proceedings.

IT IS SO ORDERED.

Dated: July 19, 2018

_____
SENIOR DISTRICT JUDGE